**Mack PRESLEY, Plaintiff,**

v.

**JACKSON MUNICIPAL AIRPORT AUTHORITY and Mississippi Military Department, Defendants.**

**No. CIV.A.3:99CV508LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

March 30, 2000.

Gary K. Silberman, Kathryn N. Nester, Jackson, MS, for Plaintiff.

Alan L. Moore, McGlinchey Stafford, Todd Inman Woods, Adams and Reese, Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, T.Hunt Cole, Jr., Office of the Attorney General, Edward C. Pearson, Ms National Guard Judge Advocate Corps. NGMS–JA, Jackson, MS, for Defendants.

---

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Mississippi Military Department for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.[1]  Plaintiff Mack Presley has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that defendant's motion is well taken and should be granted.

Plaintiff, who was employed for a brief time as a civilian member of the firefighter-crash/rescue team for the 172d Airlift Wing of the Mississippi Air National Guard (MSANG), brought this suit against the Mississippi Military Department (MMD) alleging that he was wrongfully discharged in violation of Title I of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12117(a).[2]  The basic leading to his suit are not in dispute. As a condition of his employment, plaintiff was required to pass a "pre-employment baseline physical examination" and be certified as meeting certain medical requirements established for the position.[3]  Although plaintiff indicated on the medical questionnaire which he completed as part of this certification process that he had

---

1. By separate motion, defendant also objects to the affidavit of Mack Presley submitted in response to this motion.  Although plaintiff's original affidavit was unsigned and unsworn, apparently due to an inadvertent clerical error, plaintiff submitted an identical signed and sworn affidavit on January 20, 2000, after he received defendant's rebuttal memorandum and became aware of the defects in the original affidavit.  Defendant objects to the submission and consideration of plaintiff's second affidavit, contending that it was submitted out of time and in violation of Federal Rules of Civil Procedure 5, 7 and 56, as well as Mississippi Uniform District Court Rule 7.2.  Defendant also objects to specific portions of the affidavit which it claims were not based upon personal knowledge and are irrelevant and misleading.  The court concludes, however, that plaintiff's affidavit may be considered under Rule 56 of the Federal Rules of Civil Procedure.

2. Plaintiff also sued the Jackson Municipal Airport Authority but the court has previously entered its opinion and order dismissing that defendant.

3. Plaintiff mentions in his affidavit that no request for medical information was made until after he had been working for three weeks, at which time he was sent to a local clinic to undergo a physical examination.  Although the applicable military regulations refer to a "pre-employment" examination, the position announcement provided, as a basic qualification, that all firefighters "[m]ust meet and maintain physical fitness and established weight requirements."  Thus, plaintiff was subject to the mandatory military physical requirements, despite the fact that he was not examined prior to the commencement of his employment.

experienced heart trouble in the past, the physician who conducted plaintiff's initial physical examination concluded that plaintiff was medically qualified for the position, pending approval of a cardiologist and pulmonologist. The results of the subsequent cardiology and pulmonary examination revealed that plaintiff had "[a] therosclerotic coronary artery disease as manifested by his past history" and that he had also "had [an] episode of atrial or supraventricular tachycardia as manifested by his past history." The examining cardiologist opined, though, that at the time of his examination, plaintiff was "in stable condition and [was] not exhibiting any overt signs or symptoms of cardiac dysfunction." Nevertheless, because of his medical evaluations and past medical history, MSANG concluded that plaintiff could not be "medically certified to perform the duties as a firefighter," as he would be a threat to himself and others. Accordingly, MMD terminated plaintiff's employment on February 14, 1998.

Plaintiff alleges in this action that although he, in fact, does "not have a disability and ha[s] not requested accommodation" and has "no physical restrictions from [his] doctor that prevents [sic] [him] from performing [his] job as a firefighter Rescue," the MMD nevertheless discharged him because it perceived him as having a disability and thereby violated the ADA. By its present motion, defendant argues that the entry of summary judgment on plaintiff's claim is dictated by the "inapplicability *vel non* of the ADA .... to military positions such as the one held by Presley." It further contends that Presley's claim, if not barred outright by the

ADA, nevertheless "concerns nonjusticiable military personnel decisions" which he is barred from pursuing by the *Feres* doctrine. For his part, plaintiff maintains that because he was not a member of the military, but rather was merely a civilian employed by the military, then his claim is fully cognizable under the ADA and is not subject to the bar of *Feres* and its progeny.

Regarding the former issue, the court is aware that at least two courts have held that "the remedies under the ADA are not available to uniformed members of the armed forces." *Gordon v. Illinois Army Nat'l Guard,* 2000 WL 286091 (7th Cir. 2000) (concluding that uniformed services are not covered by the ADA)[4]; *Coffman v. State of Mich.,* 120 F.3d 57 (6th Cir.1997). Plaintiff does not suggest that the result ought be otherwise had he, in fact, been a uniformed member of the MSANG; he acknowledges that he could not pursue an ADA claim for his discharge had that been the case. He submits, though, that because he was a civilian employee, he is entitled to the full protection of, and remedies provided by the ADA.

In view of plaintiff's status as a civilian employee, the court cannot conclude that the ADA necessarily forecloses his suit as a matter of law, without further consideration of the nature of his employment and the challenged employment decision. The ADA, like Title VII and the ADEA, likely provides protection to civilian employees of the military, or at least there is no obvious basis for concluding that it does not; but in the court's opinion, even a civilian employee's claims may be barred where the

---

4. Although the court in *Gordon* observed that "a National Guard unit would appear to fall under the ADA's definition of a 'public entity' and an 'employer,'" and further that "the ADA does not specifically exempt the military or National Guard from coverage," the court nevertheless concluded that "Congress did not intend the ADA to apply to the relationships between the [Illinois Air National Guard] and its enlisted members." *Gordon,* 2000 WL 286091, at *4. The court noted that at the time Congress enacted the ADA, there were numerous cases interpreting similar anti-discrimination statutes, including Title VII and the ADEA, in which it had been concluded that those statutes did not apply to uniformed members of the military and National Guard units; and it reasoned that Congress was presumably aware of those rulings and thus had it intended that the ADA would cover the military, it would have said this and conversely, would have known that by not mentioning members of the military, "the ADA would be inapplicable to them." *Id.*

discriminatory personnel actions challenged by the plaintiff were "integrally related to the military's unique structure," *Mier v. Owens,* 57 F.3d 747, 748 (9th Cir. 1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996)("Title VII applies to Guard technicians except when they challenge personnel actions integrally related to the military's unique structure."); *Gregory v. Widnall,* 153 F.3d 1071, 1074 (9th Cir.1998) (noting in Title VII case charging discrimination based on race and sex that decisions relating to the "promotion [or] suspension" of civilian employees of the National Guard, including technicians, are "integrally related to the military's unique structure").

At issue in *Mier* was "the circumstances under which Title VII coverage applie[d] to ... dual-status employees"—"dual-status" describing a civilian employee who, by statute, is required to join the National Guard as a condition of his employment.[5] *Mier,* 57 F.3d at 749. The court noted that Guard technicians, who serve in a dual capacity as both military and civilian employees, are in a different position than purely military employees, who unquestionably are not covered by Title VII, *id.* The court went on to explain as follows:

> Courts have declined to review a variety of employment actions involving military personnel because, in the military, "overriding demands of discipline and duty" prevail, demands which do not have a counterpart in civilian life. *Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983) (internal quotation omitted).... Courts regularly decline to hear lawsuits involving personnel actions integrally related to the military's unique structure. Military personnel cannot sue superior officers to recover damages for alleged constitutional violations because the "relationship between enlisted military personnel and their superior officers ... is at the heart of the necessarily unique structure of the Military Establish-

ment." *Id.* at 300, 305, 103 S.Ct. at 2366, 2368. A Guard technician's challenge to a military transfer is nonjusticiable in part because "transfer decisions go to the core of deployment of troops and overall strategies of preparedness." *Sebra v. Neville,* 801 F.2d 1135, 1142 (9th Cir.1986). Guard technicians' challenges to discharge by the Guard and termination from technician employment are nonjusticiable because judicial review "would seriously impede the military in performance of its vital duties." *Christoffersen v. Washington State Air National Guard,* 855 F.2d 1437, 1444 (9th Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989).

*Id.* at 749–50. The court did recognize that "personnel actions are not always integrally related to the military's unique structure," but opined that employment decisions which are "inherently military" are nonjusticiable. *Id.* at 750.

■ Having considered the circumstances of this case, and in particular the nature of Presley's employment, which the court considers to be predominately military despite Presley's classification as a civilian employee, together with the nature of the decision which he challenges, which the court considers to be "inherently military" inasmuch as it challenges his fitness to serve the military, the court, for the reasons identified in *Mier,* believes that plaintiff's ADA claim is not cognizable.

The doctrine of intramilitary immunity, or the *Feres* doctrine, also supports the court's conclusion that plaintiff's claims are barred from judicial consideration. In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that service members of the armed forces cannot bring tort suits under the Federal Tort Claims Act for injuries that "arise out of or are in the course of activity incident to service." While *Feres* arose in the context of an

---

**5.** *See Stauber v. Cline,* 837 F.2d 395, 396 (9th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55,

102 L.Ed.2d 33 (1988) (citing 32 U.S.C. §§ 709(b), 709(e)(1) & (2)).

FTCA claim, the applicability of this doctrine of intramilitary immunity has not been so limited, but rather the doctrine has been expanded, most significantly in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In *Chappell,* the plaintiffs charged their superior officers with racial discrimination in making duty assignments, completing performance evaluations, and imposing discipline. Focusing primarily on one of the reasons given in *Feres,* namely, the concern that tort suits would interfere unduly in military affairs and specifically on the need for exclusivity in military discipline and grievance matters,[6] the Court held that the *Feres* doctrine barred the plaintiffs from maintaining a *Bivens* action against the defendant officers. *Chappell,* 462 U.S. at 301–02, 103 S.Ct. 2362, 76 L.Ed.2d 586. "This aim to protect an exclusive military sphere of authority was emphasized again" in subsequent decisions, including *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042–43, 87 L.Ed.2d 38 (1985) (an FTCA case), in *United States v. Stanley,* 483 U.S. 669, 682–83, 107 S.Ct. 3054, 3063–64, 97 L.Ed.2d 550 (1987) (a *Bivens* case), and *United States v. Johnson,* 481 U.S. 681, 690–91, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987) (an FTCA case). *Day v. Massachusetts Air Nat'l Guard,* 167 F.3d 678, 682 (1st Cir.1999). In *Shearer,* for example, the Court observed,

---

**6.** The Supreme Court in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), articulated three broad rationales underlying the *Feres* doctrine. First, since the relationship between servicemembers and the government is " 'distinctively federal in character'," it would be irrational for the government's liability to turn on the situs of the injury or accident as it would in an FTCA claim. *Id.* at 689, 107 S.Ct. at 2068. Second, since the FTCA was designed to provide a remedy for those who had no other remedy and since Congress has provided generous benefits to injured servicemembers, Congressional intent would be frustrated if injured servicemembers could bring FTCA actions. *Id.* at 690, 107 S.Ct. at 2068–69. Third, such suits are barred because "they are the 'type[s]

Although the Court in *Feres* based its decision on several grounds, " " '[i]n the last analysis, *Feres* seems best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.' " " *Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042 (quoting *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963)). The Court expressed concern that

> [t]o permit [a suit which would require military officers to testify as to each other's decisions and actions] would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions ... [although, as the Court has noted,] such " 'complex, subtle, and professional decisions as to the composition, training, ... and control of a military force are essentially professional military judgments.' "

*Shearer,* 473 U.S. at 58, 105 S.Ct. at 3043. Ultimately, concluding that an impermissible level of judicial intrusion into military discipline and decisionmaking would result if the type of claim at issue were permitted, the Court held that the *Feres* doctrine

---

of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.' " *Id.,* 107 S.Ct. at 2069 (quoting *Shearer,* 473 U.S. at 59, 105 S.Ct. at 3043 (emphasis in original)).

The Fifth Circuit has more recently identified the following three slightly modified rationales supporting this exception to the Torts Claims Act: "(1) the 'distinctively federal' relationship between a serviceman and his superiors; (2) the ability of servicemen to receive no-fault statutory disability and death benefits; and (3) the need to preserve military discipline and prevent judicial second guessing of military decisions." *Schoemer v. United States,* 59 F.3d 26, 28 (5th Cir.1995).

barred the action. *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3042–44; *see also Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977) (of considerable importance to *Feres* is "whether the suit requires the civilian court to second-guess military decisions"); *Miller v. United States*, 42 F.3d 297, 301, 302, 304 (5th Cir.1995) ("the most important rationale" for *Feres* doctrine is "the need to exercise a great deal of caution before requiring or allowing the civilian bench and bar to analyze and, in the end, judge military decisions" because "the propriety of military decisions and actions are committed to the military and not to the courts").

The *Feres* "incident to service" test has thus been "broadly construed to immunize the United States and members of the military from any suit which may intrude in military affairs," "second-guess[ ] military decisions," or "impair[ ] military discipline." *Miller*, 42 F.3d at 302 (citing *Stauber v. Cline*, 837 F.2d 395, 396 (9th Cir. 1988)). In other words, *Feres* bars "claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3043. *See also Hodge v. Dalton*, 107 F.3d 705, 710 (9th Cir.1997) (*Feres* doctrine is applicable "whenever a legal action 'would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States.'") (quoting *McGowan v. Scoggins*, 890 F.2d 128, 132 (9th Cir.1989); *Persons v. United States*, 925 F.2d 292, 295 (9th Cir.1991)) ("practically any suit that 'implicates ... military judgments and decisions' runs the risk of colliding with *Feres*") (quoted in *Miller*, 42 F.3d at 304).

In the case at bar, defendant argues that "[t]he decision to nonretain Presley was a military command decision, made by a military officer due to Presley's noncompliance with mandatory military regulations," and that therefore, this action, in which Presley undertakes to challenge that decision, is barred by the *Feres* doctrine.

Plaintiff, though, insists that because he is not a member of the armed services but rather a "pure" civilian employee, *Feres* simply does not apply to him.

There is, indeed, language in a number of cases purporting to limit application of *Feres* to claims by enlisted members of the military. *See, e.g., Boyle v. United Technologies Corp.*, 487 U.S. 500, 510, 108 S.Ct. 2510, 2517–18, 101 L.Ed.2d 442 (1988) ("[The *Feres* ] doctrine covers only service-related injuries, and not injuries caused by the military to civilians...."); *Taber v. Maine*, 67 F.3d 1029, 1047 (2d Cir.1995) ("*Feres* does not bar suits against the government when the injured plaintiff is a civilian. This remains the case even though the injurer is in the military and military discipline is directly involved."); *see also Sheridan v. United States*, 487 U.S. 392, 401, 108 S.Ct. 2449, 2455, 101 L.Ed.2d 352 (1988) (injured civilian shot by drunken serviceman could sue government under FTCA for navy personnel's negligence in knowingly allowing drunken serviceman to leave navy base with rifle); *United States v. Brown*, 348 U.S. 110, 110–13, 75 S.Ct. 141, 142–44, 99 L.Ed. 139 (1954) (*Feres* did not apply to claim by civilian for negligent treatment received at Veteran's Hospital for treatment of service-connected injury). These cases all recognize that the bar of *Feres* does not extend to tort claims by civilians alleged to have sustained injury at the hands of military personnel. In the court's opinion, however, it is not necessarily so limited.

*Feres* has routinely been invoked to bar suits brought by civilian employees of the military—most often "dual-status" employees claiming to have sustained injury while in their civilian status—where such suits call into question command or personnel decisions by military personnel. *See McGowan v. Scoggins*, 890 F.2d 128, 138 (9th Cir.1989) (holding, with regard to cases involving an injured person working under the direct supervision of military personnel, that "a claim may be barred under the (*Feres* ) intramilitary immunity doctrine if the action brings into question command or personnel decisions by mili-

tary personnel, notwithstanding the fact that the plaintiff is a civilian"); *see also Stauber v. Cline,* 837 F.2d 395, 399–400 (9th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988) (plaintiff and defendants were civilian mechanics employed by Alaska Army National Guard whose Guard membership was a condition of their employment; court rejected plaintiff's argument that *Feres* was inapplicable because his claims arose while he and defendants were serving as civilian employees, since record showed that "in their work [plaintiff] and the defendants were always under the command of active-duty military officers"); *Wood v. United States,* 968 F.2d 738, 739 (8th Cir.1992) (rejecting Guard technician's argument that *Feres* military justiciability doctrine did not apply to his claim because he was a civilian technician for the National Guard and ... the position for which he sought appointment [was] a civilian technician position and observing that "[t]he hybrid nature of the [civilian technician] position renders it susceptible to the doctrine restricting review of military decision-making."); *cf. Heredia v. United States,* 887 F.Supp. 77, 82 (S.D.N.Y.1995) ("Because the amended complaint alleges that plaintiff was neither a service member nor a civilian employee

of the military, the *Feres* doctrine does not apply.") (citing *Sheridan,* 487 U.S. at 401, 108 S.Ct. at 2455).

■  While the plaintiff in the case at bar was not actually an enlisted member of the military, the court is nevertheless persuaded that *Feres* may properly be applied to bar the present suit since his position was of a decidedly military nature and his claimed injury indisputably arose incident to his service to the military.[7]  Unlike Guard technicians and other dual-status employees, plaintiff's membership in the MSANG was not required as a condition of his employment;[8] but the military nature of his employment is evident from the requirements of his position, the function of the firefighter-crash/rescue team and the supervisory/administrative structure involved.

The firefighter-crash/rescue team, of which plaintiff was briefly a member, is operated under the auspices of MSANG and the MMD, and is stationed at Thompson Field Air National Guard Base, a military installation administered by MSANG, along with the MMD, the National Guard Bureau of the Department of Defense and the Department of the Air Force.[9]  The base, at which the firefighter-crash/rescue

---

7.  The court would note that while the defendant herein is not the United States, but rather the Mississippi Military Department, *Feres* may still be appropriately invoked.  In *Bowen v. Oistead,* 125 F.3d 800, 804 (9th Cir.1997), the court explained that "the military apparatus of the United States cannot be divided into strictly state and federal components," and concluded that *"Feres* applies to the state National Guards and their members due to the integral role they play as part of the nation's defense force and the substantial degree to which the state National Guards are financed, regulated, and controlled by the federal government even when not called into active federal service." *See also Uhl v. Swanstrom,* 79 F.3d 751 (8th Cir.1996) (applying *Feres* bar to suit by National Guardsman against his commanding state officer, the Adjutant General of the Iowa Air National Guard, and the Iowa Air National Guard); *Townsend v. Seurer,* 791 F.Supp. 227, 229 (D.Minn.1992) ("[R]egardless of whether the suit is brought against the state National Guard and individual Guard personnel or

against the United States and individual Guard personnel, the *Feres* doctrine will bar the action.").

8.  The evidence of record, in fact, reflects that Guard membership had once been a condition for employment in the position in question but that the requirement was dropped only because of the difficulty MSANG was having in fully staffing the firefighter-crash/rescue team. *See infra* note 12.

9.  This MSANG base facility is located on grounds shared with the Jackson International Airport.  As noted in the court's earlier opinion dismissing the Jackson Municipal Airport Authority (JMAA) from the suit, the United States of America, the State of Mississippi, JMAA and the National Guard Bureau of the Department of Defense entered into a Fire Protection Operational Agreement in 1989, under the terms of which MSANG agreed to provide firefighter-crash/rescue services to the commercial air traffic on the JMAA side of the airport.  In return, MSANG acquired use of

facility is located, is also home to the 172d Airlift Wing of the MSANG, a MSANG drilling unit of airmen. Because military training operations are conducted at the base throughout the year, the MSANG, as part of its military mission, is required to maintain military firefighter-crash/rescue equipment and personnel on the base at all times.

The operations, manning, equipment and organization of the firefighter-crash/rescue team on the base are governed by military regulations. In particular, NGR5–1/ANGI 63–101 controls the administration of MSANG fire protection activities, and specifically authorizes the MSANG to staff the firefighter-crash/rescue team during times when the drilling unit is not in a normal drill status. Pursuant to the regulations, when not in drill status, members of the 172d man the military firefighter-crash/rescue team under the administration of the MMD. In that capacity, they are technically MMD employees who are paid with federal dollars appropriated to MSANG through the National Guard Bureau, an agency of the Department of Defense. In addition to its MSANG airmen members, the firefighter-crash/rescue team is also manned by a number of civil-

ian firefighters, who are available when members of the drilling unit are not. And although they are civilians, under the terms of NGR5–1/ANGI 63–101, they must still meet the same requirements for the position as the team's military members, including, *inter alia*, in particular, the physical requirements for the position.

The firefighter-crash/rescue team is commanded by Air Force Major Wayne M. Bryant, Jr., the Base Civil Engineer for the 172d Airlift Wing, while the Base Fire Chief, a federal military technician, and the MMD, serve as the team's administrators. Major Bryant's affidavit, which is unrefuted by plaintiff, establishes that "[t]he position applied for by Presley is subject to the specific military requirements set forth in NGR 5–1/ANGI 63–101," which include, but are not limited to,

(a) Passing a pre-employment baseline physical examination identified in NFPA 1582, B–3.1, "Preplacement and Baseline Medical Evaluation." [10]

(b) the wearing of a specific distinctive military firefighter-crash/rescue team fire fighters uniform.[11]

(c) successful completion of specific military firefighter-crash/rescue fire

---

airport runways and leases of property to be used by the military, as well as certain services to be provided in connection therewith.

**10.** Bryant further states that

[t]his requirement is mandatory under federal law and MSANG has no choice in that regard. The referenced standard, NFPA 1582, requires in part that . . . :
2–3.3 A candidate shall not be certified as meeting the medical requirements of this standard if the fire department physician determines that the candidate has any Category A medical condition . . . .
2–3.4 A candidate shall not be certified as meeting the medical requirements of this standard if the fire department physician determines that the candidate has a Category B medical condition . . . that is of sufficient severity to prevent the candidate from performing, with or without reasonable accommodation, the essential functions of a fire fighter without posing a significant risk to the safety and health of the candidate or others.

The court would note that, included among Category A conditions are " '(c) Myocardial insufficiency [and] (e) History of myocardial infarction, coronary artery bypass, or coronary angioplasty.' Category B conditions are defined as '(b) Coronary artery disease [and] (e) Ventricular tachycardia.' "

**11.** Plaintiff asserts in his affidavit that the Air National Guard members of the firefighter-crash/rescue team wore military uniforms while serving at the fire station and that the civilian firefighters wore different, non-military uniforms. The defendant concedes that the guardsmen/firefighters wear a military uniform during drill weekends, but claims that this distinction is "immaterial and misleading" since plaintiff "served on the team manning the military firefighter-crash/rescue facility *during the times the drilling unit was not on IDT, ADT, AD, ADSW or SAD orders*." (emphasis in original). Defendant further states that "[w]hen manned during the week, *all* the firefighters wore the same distinctive military firefighter-crash/rescue team fire fighter uniform." (emphasis in original).

fighter training (which is currently conducted at Goodfellow Air Force Base, an active federal military installation).

(d) the completion of a military security background check and the subsequent possession of a security clearance of "SECRET."

(e) the holding of a military drivers license.[12]

The mission of the firefighter-crash/rescue team, as described by Major Bryant, involves the protection of military personnel and air crew and the handling of military ordinance and munitions, as well as access to classified information and equipment. And that mission, Bryant states, is directly related to the military readiness of the 172d and to the safety of its personnel, as well as that of military aircraft and personnel from other units who utilize the Thompson Field Air National Guard Base.

From the foregoing, it is evident that while he may have been nominally a civilian, plaintiff's position was in effect a military position, and his relationship to his superiors "a military supervisory relationship." Conceptually, plaintiff was in little different position as regards his relationship to the military than dual-capacity employees, to whom *Feres* is routinely applied. As an example of this, under the National Guard Technicians Act, civilian technicians are subject to the state adjutant general's administration, must maintain membership in the National Guard, hold the military grade specified by the Secretary, and meet the security standards established by the Secretary. *See* 32 U.S.C. § 709(b), (c), (e)(2). Plaintiff is similarly subject to the state adjutant gen-

eral's administration, is subject to military discipline, must meet the security standards established by the military, must meet the physical criteria prescribed by the military and is subject to military command to the same extent as his enlisted co-workers. *Cf. Norris v. Lehman,* 845 F.2d 283, 286–87 (11th Cir.1988) (holding that *Feres* barred age discrimination suit by retired naval officer challenging decision of military supervisor to revoke his certification to teach in Naval Junior ROTC program, and observing that "while it may be true that [plaintiff] was nominally a civilian at the time, the relationship between him and Captain Lewis, in its very essence, was a military supervisory relationship[,]" and evidence established that the plaintiff's employment was governed by a comprehensive regulatory scheme, and thus "any injury he suffered ... arose out of or was in the course of activity incident to service."); *Stauber,* 837 F.2d at 400 (*Feres* applied even though injury to plaintiff, a dual-status employee, was alleged to have occurred in his status as a civilian employee, since the parties were subject to the direct command of active-duty military officers, the parties' conduct was subject to military discipline and the parties shared the same direct military relationships whether on civilian or military status). Moreover, as plaintiff's employment was governed by a "comprehensive military regulatory scheme" requiring, *inter alia,* that he meet specified medical criteria as a condition of his employment, it follows that any injury he suffered as a consequence of MSANG's determination that he failed to meet those criteria "arose out of or was in the course of activity incident to service."[13] *Cf. Schoemer v. United States,* 59

---

**12.** Major Bryant explained in his affidavit that at one time, the MSANG required all firefighter-crash/rescue team members to be current members of the MSANG. However, the MSANG began experiencing difficulty in fully staffing the team, and thus, pursuant to the federal authority granted by applicable military regulations, and specifically paragraph 36–10 h. of NGR5–a/ANGI 63–101, the Adjutant General of Mississippi authorized the hiring of certain civilians for firefighter-crash/rescue team positions. Bryant states,

however, and plaintiff does not dispute that under the applicable regulations, "[c]ivilian applicants for [Air National Guard Fire Protection Activities] positions are required to meet the exact same requirements as military members, under the terms of NGR5–1/ANGI 63–101."

**13.** In determining whether a serviceman's injuries are incurred incident to service, the Fifth Circuit typically "examine[s] the totality of the circumstances," paying particular at-

F.3d 26, 30 (5th Cir.1995) (observing that "[t]here is no question that pre-induction physicals are activities incident to service.' ")(quoting *Bowers v. United States,* 904 F.2d 450, 452 (8th Cir.1990)) [14]; *Hupp v. United States Dept. of the Army,* 144 F.3d 1144, 1148 (8th Cir.1998) (holding that a claim challenging the merits of an internal National Guard personnel decision with respect to hiring of technician was nonjusticiable where that decision involved an assessment of technician's military and civilian qualifications); *Wood v. United States,* 968 F.2d 738, 739–40 (8th Cir.1992) (holding that the plaintiff's challenge to the constitutionality and fairness of a personnel decision which necessarily involved an assessment of the plaintiff's military qualifications was nonjusticiable under *Feres* ); *Neal v. Alabama Nat'l Guard,* Civil Action No. 96–A–1495–S, 1997 WL 114910, *6 (M.D.Ala. March 13, 1997) (declining, at the pleading stage, to dismiss claim of civilian technician against Alabama National Guard on the basis of *Feres* doctrine since there were no allegations or evidence as to degree to which plaintiff was under military control at the time of the alleged

actions and the court lacked evidence of governing regulations). In sum, since a resolution of plaintiff's claim would require the court to second-guess military regulations and consequent personnel decisions, his claim is barred by the *Feres* doctrine.[15]

In summary, based on the foregoing, the court concludes that the employment decision challenged by plaintiff was "integrally related to the military's unique structure," and further that plaintiff's injuries arose incident to military service. Accordingly, his claim is barred, and his complaint will therefore be dismissed for lack of subject matter jurisdiction.[16]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

tention to the following factors: "(1) the serviceman's duty status; (2) the site of his injury; and (3) the activity he was performing." *Schoemer,* 59 F.3d at 28. This comprehensive analysis is not required in the case *sub judice,* for the type of injury involved in this case has already been recognized by the Fifth Circuit as "incident to military service." *See id.*

**14.** *Schoemer v. United States,* 59 F.3d 26 (5th Cir.1995) was a medical malpractice action challenging treatment the plaintiff received in order to return to active service. The court concluded that the action was barred by the *Feres* doctrine, noting that "[b]ecause the purpose of [the plaintiff's] medical examination was to allow him to enlist in the Louisiana National Guard, the examination was a prerequisite to his return to military service." *Id.* at 30. In so holding, the court in *Schoemer* noted that "[o]ne court ha[d] applied *Feres* to bar an FTCA claim arising from a National Guard preenlistment medical examination" and that "[o]ther courts ha[d] reached the same result for medical examinations that are a prerequisite to active duty." *Id.*

**15.** The conclusion that plaintiff was, in effect, a de facto member of the military is com-

pelled, particularly considering that he served in a military position, performing the very same military functions as those with whom he worked. It is beyond question that any of those members of the firefighter-crash/rescue team, alongside whom plaintiff worked, who happened also to be enlisted in the National Guard, would be precluded by *Feres,* and the policy considerations upon which *Feres* is premised, from challenging a decision by MSANG that they failed to meet the physical requirements for their firefighter posts. It would be anomalous, indeed, if the plaintiff, who occupies the same firefighter position, would not likewise be precluded from challenging the same decision. The relevant policy considerations apply with equal force to both the military and nonmilitary members of the team.

**16.** *See Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1996) ("A motion to dismiss pursuant to the *Feres* doctrine is properly treated as a Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, rather than as a motion for summary judgment.").