**Elaine M. KITOWSKI, as Personal Representative of the Estate of Lee William Mirecki, deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–3744

United States Court of Appeals, Eleventh Circuit.

May 29, 1991.

---

**43.** McCarthy, *supra* note 6, § 15:3.

Martin H. Levin Ross M. Goodman, Fredric G. Levin, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, Fla., for plaintiff-appellant.

Michael P. Finney, Asst. U.S. Atty., Pensacola, Fla., Robert S. Greenspan, Steve Frank, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before ANDERSON, Circuit Judge, and RONEY * and LIVELY **, Senior Circuit Judges.

LIVELY, Senior Circuit Judge:

This is a suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80 (1988), by the mother of a Navy enlisted man who died during a training exercise. The complaint sought damages for wrongful death. The district court determined that it lacked subject matter jurisdiction and dismissed the action. The district court reached this conclusion by applying the holding in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which states that the FTCA does not permit claims for injuries to active duty military personnel that "arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

On appeal the plaintiff argues that the *Feres* doctrine does not bar an action under the FTCA when the acts causing injury to active duty military personnel are "egregious." Finding no authority for such an exception to *Feres*, we affirm.

## I.

The facts are not in dispute. Lee Mirecki was an Airman Recruit in the United States Navy. He died on March 2, 1988, while participating in sea rescue training at the Naval Air Station in Pensacola, Florida. Mirecki enlisted in the Navy and entered active duty in 1987. Under his enlistment contract, he was guaranteed specialized training as an Aviation Anti–Submarine Warfare Operator (AW). According to this agreement, if Mirecki became ineligible to continue the specialized training due to some personal fact of which he was unaware, he could choose either to be reas-

---

signed to another program or to be separated from the Navy.

As part of his specialized training as an AW, Mirecki was required to complete a program at the Rescue Swimmer School (RSS) at the Naval Air Station in Pensacola. Before beginning the course at the RSS, he signed an agreement that permitted him to drop the course on request at any time, generally referred to as "drop-on-request" or "DOR." If he dropped the course, he would no longer be eligible for AW training and would have to decide at that time whether he wished reassignment or discharge from the Navy. The RSS program involved rigorous training to prepare recruits for retrieving downed aircraft carrier-based airmen under wartime conditions.

As part of the RSS program, the recruits must participate in a drill known as "sharks and daisies," in which students, wearing only swim fins and no safety equipment, swim in a circle with their hands behind their backs. Instructors grab the students in either a front or rear head hold in an attempt to simulate panicking victims in need of rescue. If a student correctly performs the release procedure, he continues swimming in a circle and other instructors repeat the scenario. If a student fails to perform the maneuver correctly, he is given additional instruction.

Mirecki had a fear acquired in childhood of being held under the water, and this fear prevented him from succeeding in the sharks and daisies drill. In February 1988 Mirecki was unable to complete the drill and voluntarily withdrew from the RSS. At that time, he underwent a series of physical and psychological exams and was placed on "medical hold." Soon thereafter, Mirecki exercised his option to return to the RSS program, allegedly because of pressure from RSS instructors. Mirecki was re-enrolled in the RSS class, and on the day of his death, March 2, 1988, he was once again undergoing the rigors of the sharks and daisies drill. According to the plaintiff, at least two of the instructors on duty that day were aware of Mirecki's earlier problem with the drill. Once again,

Mirecki had extreme difficulty with the drill and requested that he be dropped from the course and not be forced to re-enter the pool. Instead of honoring his request, the instructors seized him and forced him back into the water, and began "smurfing" him—holding him under the water until he was unconscious and had turned blue. At this time, other recruits were commanded to line up, turn their backs and sing the national anthem. After being held under the water for a considerable length of time, Mirecki died from heart arrhythmia, ventricular fibrilation and decreased oxygen.

In addition to the foregoing facts surrounding Mirecki's death, the complaint alleged that for two months after Mirecki's death, the Navy maintained that his death was caused by accidental drowning. After hearing from other trainees who were present that day at the pool that the Navy was not revealing all the circumstances of Mirecki's death, the family contacted members of Congress and the press. After several inquiries from the press and members of Congress, the Navy finally admitted the circumstances surrounding Mirecki's death. On January 25, 1990, Mirecki's mother, Elaine Kitowski, as personal representative of his estate, filed this wrongful death action under the Federal Tort Claims Act in district court for the Southern District of Florida. She appeals from the judgment of dismissal.

## II.

In *Feres* the Supreme Court held that the government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. *Feres* announced a judicially created immunity doctrine that had the effect of limiting the general waiver of governmental immunity for tort established by the FTCA.

In applying *Feres*, this court has identified three factors to be considered in determining whether the particular activity of a member of a military service at the time of injury is "incident to service." These factors are "(1) the duty status of

the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of the injury." *Pierce v. United States*, 813 F.2d 349, 353 (11th Cir.1987); *Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir.1980).[1] In this case the district court held, "the undisputed facts establish that decedent was on active duty participating in training exercises at NAS when the fatal injury was inflicted, and thus such injuries were obviously incident to his duties in the USN."

### III.

The plaintiff makes three arguments on appeal: (1) that her son had been effectively discharged at the time of his death; (2) that the Supreme Court has recognized an exception to the *Feres* doctrine where the conduct of military superiors is egregious; and (3) that *Feres* should be overruled.

### A.

■ Turning to the third argument first, we clearly have no authority to overrule a decision of the Supreme Court. In *Feres*, Justice Jackson noted that if the Court had misinterpreted the FTCA, "at least Congress possesses a ready remedy." 340 U.S. at 138, 71 S.Ct. at 155. In the more than forty years since *Feres*, Congress has not indicated that *Feres* misinterpreted the Act. Furthermore, the Supreme Court has continued to apply *Feres* strictly when lower courts have sought to give the "doctrine" more elasticity in cases where the facts were different from those considered in *Feres*. See, *e.g.*, *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987); *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). It is true that there now appears to be some support on the Supreme Court for overruling *Feres*. See Justice Scalia's dissent in *Johnson*, 481 U.S. at 692–703, 107 S.Ct. at 2069–2075. It seems clear, however, that a majority of the Justices do not agree at this time.

### B.

■ With respect to the first argument, the only conclusion can be that Mirecki was on active duty at the time he started RSS training again on March 2, 1988. He had not been discharged from the Navy or even transferred from the RSS program. If we assume that his oral request to "DOR" was effective to remove him from the program, he continued to be a Navy serviceman until a decision was made either to discharge him or to transfer him to other duties. He could not effect his discharge unilaterally by merely withdrawing from the RSS program.

### C.

■ In making his second argument—that there is an exception to *Feres* where egregious conduct causes an injury—the plaintiff contends that a careful reading of recent Supreme Court decisions supports her position. We disagree. Justice O'Connor, dissenting in *Stanley*, wrote that, in her view, "conduct of the type alleged in this case is so far beyond the bounds of human decency that as a matter of law it simply cannot be considered a part of the military mission." 483 U.S. at 709, 107 S.Ct. at 3065. The conduct referred to was subjecting a soldier to medical experimentation without his knowledge or consent.

The Supreme Court considered *Stanley* only as a direct action for violation of constitutional rights as recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), not as an FTCA case. The majority in *Stanley*, however, did apply the *Feres* rationale and held that "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'" 483 U.S. at 684, 107 S.Ct. at 3064. Thus, *Stanley* forecloses a direct *Bivens*-type action by a member of the military if the injury results from an activity incident to service. Justice O'Connor

---

**1.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) adopted as precedents decisions of the former Fifth Circuit rendered prior to October 1, 1981.

would hold that injury resulting from conduct "beyond the bounds of human decency" just cannot be considered "incident to service" because such conduct is not part of the military mission.

Presumably Justice O'Connor would apply the same reasoning to similar conduct in an FTCA case. Furthermore, Justices Marshall and Stevens, who joined Justice Brennan's dissent in *Stanley* on the ground that military discipline should not be a "special factor[] counselling hesitation." when a remedy is required for a constitutional violation, might agree to an "egregious conduct" exception to *Feres*. Nevertheless, a majority of the Supreme Court has not established such an exception and this court is powerless to do so.

## IV.

■ Three separate appeals were decided in *Feres*. The common denominator of the cases was that a person on active duty had "sustained injury due to negligence of others in the armed forces." 340 U.S. at 138, 71 S.Ct. at 155. Although the instructors intentionally subjected Mirecki to "smurfing," his death resulted from their negligence in persisting in that exercise, not from an intention to kill him. The Supreme Court and the lower federal courts have wrestled with the application of the "doctrine" in numerous cases since it was announced. Despite the extreme circumstances surrounding Mirecki's death, we cannot escape the fact his death arose out of an activity incident to his military service. All three factors applied by this court in determining whether an activity is incident to service were present: Mirecki was on active duty; his death occurred on a Navy base; and he was engaged in a prescribed training exercise.

AFFIRM.