IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-50935

_____


LINDA IRENE MEISTER,

Plaintiff-Appellant,

versus

TEXAS ADJUTANT GENERAL'S DEPARTMENT;
DANIEL JAMES, III, Brigadier General,
in his official capacity as Adjutant
General of the State of Texas,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

November 28, 2000

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Linda Meister is a civilian state employee of the Texas Adjutant General's Office. She brought several Title VII claims related to her work, but the district court dismissed all of them. The district court concluded that her claims were "incident to military service" and held that they were non-justiciable under Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). We conclude, however, that Feres is inapplicable to civilian jobs in the state military departments of Texas. Instead

of applying <u>Feres</u>, the court should have dismissed one of Meister's claims for failure to allege a prima facie Title VII violation and evaluated the justiciability of the other two claims under <u>Mindes v. Seaman</u>, 453 F.2d 197 (5th Cir. 1971). We therefore affirm the dismissal of the first claim and reverse and remand for a <u>Mindes</u> evaluation of the other two.

I

Since 1985, Linda Meister has worked as a full-time civilian state employee for the Texas Adjutant General's Department of the Texas National Guard. She also happens to have been a non-commissioned officer in the Texas Air National Guard, where her position was Information Management Craftsman.

Between 1993 and the end of 1996, Meister's civilian position fell within the general category of Administrative Technician. Her specific title was "Assistant Schools Program Manager" for the Texas Army National Guard. Meister's job was to assist the Schools Program Manager, Sgt. Major Glen Andrews, an active duty member of the Texas Army National Guard. The Schools Program Manager has various responsibilities, including scheduling and coordinating attendance at U.S. Army training programs by members of the Texas Army National Guard.

Meister has alleged that Andrews subjected her to a hostile work environment, although this is not the basis of her claims

2

here. She filed a grievance concerning Andrews's behavior in October 1994, which led to an investigation. Four months after the completion of that investigation, Andrews was transferred to another department.

Andrews's transfer vacated the position of Schools Program Manager. This position, however, was designated as a "federal" position. This designation requires that the position be filled only by an active member of the military service. Meister asked that the position be redesignated as a "state" position, which would have allowed her to hold the post as a civilian. This request was denied in early 1996, and an active-duty National Guard member was hired instead.

In December 1996, Meister was transferred to Assistant Personnel Manager in the Texas Air National Guard Division. Meister had not asked for the transfer and was unhappy about it. The new position involved the management and coordination of Texas Air National Guard military personnel. Meister's duties in this job were the same as or similar to her duties as a non-commissioned officer in the Texas Air National Guard. As with Meister's job as Assistant Schools Program Manager, active military service was not a prerequisite.

One year after her transfer, in December 1997, Meister filed suit against the Texas Adjutant General's Department and the

Adjutant General of the State of Texas, Brigadier General Daniel James, III, in his official capacity. Meister claimed sexual harassment and discrimination in violation of 42 U.S.C. § 2000e ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA"). Specifically, she complained of the denial of a promotion to Schools Program Manager and of her transfer to the position of Assistant Military Personnel Officer.

In February 1998, Meister applied for the position of State Human Resources Manager, Program Administrator IV. This position involved the management and coordination of the state personnel functions of the Adjutant General's Department. Active military service was not a requirement, but Meister never received an interview, and someone else was hired for the job.

In March 1998, the defendants answered Meister's complaint and moved to dismiss the state law claims on the grounds of Eleventh Amendment immunity. The court granted this motion in June 1998.

In November 1998, Meister amended her complaint, adding a Title VII retaliation claim. Meister alleged that she "was denied promotion, harassed, and laterally transferred" because she had complained of unlawful discrimination. This version of the complaint is the one that is relevant to this appeal, and it raises claims with respect to the following:

    (1)   the defendants' failure to promote Meister to the Schools Program Manager position;

4

> (2) Meister's involuntary transfer to the position of Assistant Air Personnel Manager; and
>
> (3) the defendants' failure to promote Meister to State Human Resource Manager.

The defendants filed two motions to dismiss. The first, which was also a motion for summary judgment in the alternative, asserted that the claims were not justiciable under <u>Feres v. United States</u>, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In <u>Feres</u>, the Supreme Court had held that military servicemen could not bring claims against the federal government under the Federal Tort Claims Act. The second motion addressed the merits. On August 2, 1999, the two motions were referred to a magistrate judge. He issued his report and recommendation on August 17 that the first motion to dismiss be granted, and that the summary judgment motion be denied. In reaching this conclusion, the magistrate judge considered evidence beyond the pleadings. The second motion, to dismiss on the merits, was not mentioned.

On August 27, 1999, Meister filed the following two objections to the magistrate judge's report: (1) that the report failed to address the denial of promotion to the State Human Resources Director position; and (2) that the magistrate judge failed to analyze justiciability under <u>Mindes v. Seaman</u>, 453 F.2d 197 (5th Cir. 1971).

After reviewing the case <u>de novo</u>, the district court issued an order on August 31, 1999, approving and accepting the magistrate judge's report and granting the defendants' motion to dismiss. Meister then filed this appeal.

II

A

We will review the dismissal in this case as a summary judgment determination. Under Federal Rule of Civil Procedure 12(b), a district court may treat a 12(b)(6) motion to dismiss as a summary judgment motion by considering material outside the pleadings. That is what the magistrate and district court judges did here. We review a grant of summary judgment <u>de novo</u>. <u>Threadgill v. Prudential Securities Group, Inc.</u>, 145 F.3d 286, 292 (5th Cir. 1998).

B

We begin by observing that the plain language of Title VII allows civilian employees of state National Guard units to bring suit against their employers.[1] The question in this case, however,

---

[1]The Texas Adjutant General's Department urges the court to consider the close analogy between federal and state military departments. It is true, of course, that the United States armed forces are not generally subject to Title VII's anti-discrimination provisions, but we do not consider this relevant. First, the United States armed forces are not covered by Title VII because the United States is excluded from the statutory definition of "employer." <u>See</u> 42 U.S.C. § 2000e(b). In this case, Meister is an employee of a state agency, and Title VII's definition of

6

is not whether Title VII provides Meister a cause of action but whether the federal courts are permitted to review the military's decision and to grant relief in this case. The issue, in other words, is simply whether Meister's claims are *justiciable*.

C

(1)

The first issue before us is whether the district court was correct in analyzing justiciability under <u>Feres</u>. The magistrate judge's report, which the district court adopted in full, asked whether the acts forming the basis of Meister's complaint were "incident to service in the military." <u>See</u> <u>United States v. Stanley</u>, 483 U.S. 669, 681, 107 S.Ct. 3054, 3064, 97 L.Ed.2d 550 (1987)(quoting <u>Feres</u>, 340 U.S. at 146, 71 S.Ct. at 159). The report first applied this test to Meister's claim concerning the denial of promotion to Schools Program Manager. The magistrate judge recognized that this position has a "tremendous effect on

---

"employer" would apparently include state governments. <u>Id.</u> Second, even if we were to treat federal and state military departments in the same manner, we would note that Title VII allows civilian employees in federal military departments to bring suit against the government employer. <u>See</u> <u>Hodge v. Dalton</u>, 107 F.3d 705, 708 (9th Cir. 1997)(§ 2000e-16 applies to non-uniformed employees). Although this provision is not directly applicable in the present case because the statutory definition of "military departments" excludes the state National Guards, <u>see</u> 5 U.S.C. § 102, the protection afforded to federal civilian employees may be further indication that civilian employees of National Guard units are also protected.

7

military careers because it determines military occupational specialties" and controlled training, thereby determining promotability of individual soldiers. For these reasons, the defendants' "command decision" to maintain this requirement of active military service was one "integrally related to the military's unique structure." Thus, the matter of Meister's promotion was not justiciable.

As for Meister's involuntary transfer claim, the magistrate judge found that Meister's new position as Assistant Military Personnel Officer "involve[d] management and coordination" of military activities. Moreover, Meister's supervisor was an active member of the military. Thus, the magistrate judge concluded that Meister's civilian position was "inextricably intertwined" with the National Guard's military mission and was therefore nonjusticiable.

The magistrate judge did not specifically analyze Meister's third claim--retaliation in denying her an opportunity to compete for the State Human Resources Manager position. But, as the district court pointed out, the magistrate judge concluded that all three of Meister's claims relate to personnel decisions that are "inextricably intertwined" with the unique structure of the Texas National Guard.[2]

---

[2]In conducting its <u>de novo</u> review, the district court considered the third claim in more detail and concluded that the position of Assistant Military Personnel Officer, "which exists

8

(2)

Before we can evaluate the district court's analysis, we need to determine the standard of review. The defendants contend that Meister failed to object specifically to the magistrate judge's reliance on <u>Feres</u>. That would normally limit our review to one for plain error. <u>Douglass v. United Services Automobile Assoc.</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(<u>en</u> <u>banc</u>). But when the district court has engaged in <u>de</u> <u>novo</u> review, we do not require these specific objections to the magistrate judge's report as a prerequisite to full review. <u>See</u> <u>Douglass</u>, 79 F.3d at 1429. In the present case, the district court engaged in such a <u>de</u> <u>novo</u> review. We therefore will not impose this objection requirement here and will instead address this legal issue <u>de</u> <u>novo</u>.

(3)

A first step in analyzing the applicability of <u>Feres</u> is to review that case and its progeny. The holding in <u>Feres</u> itself is actually quite narrow. In that case, three claimants brought negligence suits against the United States armed forces on behalf of deceased servicemen. The issue before the Court was whether these suits could proceed under the Federal Tort Claims Act. The

solely to manage the state personnel functions of the Adjutant General's Department and which is a hybrid state/federal/military position is 'integrally related to the military's unique structure'" and is within the scope of <u>Feres</u>.

Court explained that the FTCA's impact was limited--it merely waived immunity, putting the United States government in the same position as any other defendant. The FTCA had not created a new cause of action. Thus, the government only faced liability "to the same extent as a private individual under like circumstances." Feres, 340 U.S. at 141, 71 S.Ct. at 157.

In analyzing whether analogous liability would exist under federal law[3] between private individuals, the Court focused on the plaintiffs' relationship to the defendant, not the nature of the claim itself. In other words, the Court tried to find a private plaintiff-defendant relationship analogous to the soldier-superior relationship. The Court did not, however, seek a federal analogue to state negligence law.

Ultimately, the Court concluded that there was no private relationship similar to that between soldier and government. Thus, the plaintiffs had failed to establish "liability of a 'private individual' even remotely analogous" to that being asserted by the plaintiffs. Id., 340 U.S. at 141, 71 S.Ct. at 157. As a result, soldiers could not recover for injuries that "ar[ose] out of or

_____

[3]Though the suits were state law negligence suits, the Court concluded that federal law applied to suits concerning the relationship between the government and its soldiers. Feres, 340 U.S. at 143-44, 71 S.Ct. at 158.

10

were in the course of activity incident to service." Id. 340 U.S. at 146, 71 S.Ct. at 159.

Little was done with Feres until Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). By that time, a new cause of action had been formulated by the courts--a Bivens suit for violations of constitutional rights. Thus, the Court did not need to consider available state law provisions and could instead evaluate the defendant's conduct for constitutional violations. The plaintiffs were seeking redress for discrimination in duty assignments and performance evaluations. But the Court rejected their claim despite the existence of Bivens:

> The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.

Id., 462 U.S. at 304, 103 S.Ct. at 2367. The Court also explained that the Constitution granted Congress plenary authority to regulate military life, and that Congress had done so by setting up a judicial system separate from Article III courts. Id., 462 U.S. at 302, 103 S.Ct. at 2366-67. This suggested that the courts lacked the constitutional foundation to enter this field in the absence of Congressional imprimatur. Taking these factors into consideration, the Court concluded that "enlisted military personnel may not maintain a suit to recover damages from a

11

superior officer for alleged constitutional violations." Id, 462 U.S. at 305, 103 S.Ct. at 2368.

The Court extended this principle to non-constitutional claims in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), where the plaintiff was the administratrix of an army private who had been murdered by another serviceman. The private had been off-base and off-duty at the time. The plaintiff asserted that the Army had been negligent in failing to exert control over the murderer. The Court rejected this claim as well, citing Feres and Chappell, and noting that allowing the claim to proceed would involve the courts in military management, evaluating "basic choices about discipline, supervision, and control of a serviceman." Id., 473 U.S. at 58, 105 S.Ct. at 3043.

In United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Court reestablished the importance of the "incident-to-service test," first promulgated in Feres. The plaintiff was a former serviceman. During his tour of duty, the military had given him LSD as part of an experiment into the drug's effects. He argued that the Feres principle against allowing his Bivens claims to proceed was limited to suits by a subordinate against a superior officer. Those would be the only cases where judicial involvement would interfere with military discipline. But the Court was concerned that if this were the test, judicial

12

inquiry into the extent that particular decisions involved military discipline would interject the judiciary into the very role it was trying to avoid--military management. The Court therefore rejected all claims that "arise out of or are in the course of activity incident to [military] service." Id., 483 U.S. at 684, 107 S.Ct. at 3064. Its reason for choosing this simple test was that it "provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters." Id., 483 U.S. at 683, 107 S.Ct. 3063.

Although several circuits, including ours, have applied Feres to cases involving plaintiffs who were not members of the federal armed services, these extensions of the doctrine have been extremely limited. In Crawford v. Texas Army National Guard, 794 F.2d 1034, 1036 (5th Cir. 1986), we applied Feres to §§ 1983 and 1985 claims brought by members of the Texas National Guard. Doing otherwise would have involved the courts in military management. See also, Jorden v. National Guard Bureau, 799 F.2d 99, 106 (3d Cir. 1986)(claim by state national guard member non-justiciable); Brown v. United States, 739 F.2d 362, 366-67 (8th Cir. 1984)(same); Martelon v. Temple, 747 F.2d 1348, 1350-51 (10th Cir. 1984)(same).

Similarly, some circuits have extended the Feres non-justiciability doctrine to Title VII and other claims brought by civilian National Guard Technicians. Mier v. Owens, 57 F.3d 747,

13

750 (9th Cir. 1995); Wright v. Park, 5 F.3d 586, 589 (1st Cir. 1993); Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992). The National Guard Technician Act created this special type of position with the military, allowing civilians to serve military functions, but requiring those civilians to be members of the National Guard. 32 U.S.C. § 709(b). Thus, the special hybrid civilian-military nature of these technicians warranted application of Feres. Mier, 57 F.3d at 750; Wright, 5 F.3d at 589; Wood, 968 F.2d at 739.

(4)

The lesson we draw from these cases is this: Applicability of Feres's incident-to-service test depends upon the relationship between the plaintiff and the government. The Court made that clear in Feres, and subsequent decisions, especially Chappell, have explained why this relationship is critical--courts should not interfere with military discipline and management. These are areas where we have little competence or authority to proceed. The circuits that have extended Feres's incident-to-service test beyond claims brought by plaintiffs in the federal armed services have done so in limited and analogous circumstances. Military discipline is equally important in the state national guards. The same is also true with respect to the unique role of national guard

14

technicians.  We are aware of no decisions, however, extending the test beyond these limited circumstances.

In the present case, Meister's jobs as Assistant Schools Program Manager and Assistant Personnel Manager were civilian assignments.  She was not subject to military discipline or the military hierarchy.  She could quit whenever she wanted.  The fact that she happened to work for the Adjutant General's office did not render those roles the same as roles in the military services.[4] For that reason, we conclude that the district court's rejection of Meister's claims based upon the incident-to-service test was erroneous.

---

[4]The fact that Meister happened to be a non-commissioned officer in the Texas Air National Guard is coincidental and irrelevant to the issues before us.  She was not required to be in the National Guard to hold either the Assistant Schools Program Manager job or the Assistant Personnel Manager job.  And she is suing based on her experiences in those civilian jobs, not as a member of the National Guard.

15

D

Our conclusion that <u>Feres</u> is inapplicable does not necessarily mean that Meister's claims may proceed. First, it is well-settled that we will not reverse a judgment of the district court if it can be affirmed on any legally sufficient ground, even one not relied upon by the district court. <u>United States v. Real Property Located at 14301 Gateway Blvd. West, El Paso County, Texas</u>, 123 F.3d 312, 313 (5th Cir. 1997). Second, Meister's claims may still be non-justiciable under other judicially-created doctrines besides <u>Feres</u>. We turn now to Meister's claims.

(1)

We begin with Meister's first claim, that the defendants improperly failed to promote her to the Schools Program Manager position.

This claim fails because Meister has failed to establish a prima facie case of discrimination. One of the elements of a prima facie case that a plaintiff must establish is that he or she was qualified for the position sought. <u>Haynes v. Pennzoil Co.</u>, 207 F.3d 296, 300-01 (5th Cir. 2000). But Meister does not contest that the Schools Program Manager position was designated a "federal" position, and that this designation meant that active military service was a prerequisite for the job. Nor does Meister contest that she was not an active member of the service. The

16

defendants had no obligation to alter the qualifications on her behalf.  Thus, her first claim fails.

(2)

With respect to her other two claims, Meister must contend with another judicial abstention doctrine, this one from <u>Mindes v. Seaman</u>, 453 F.2d 197 (5th Cir. 1971).  These claims challenge Meister's involuntary transfer to Assistant Air Personnel Manager and the rejection of her application to the position of State Human Resource Manager.

In <u>Mindes</u>, the plaintiff had been moved from active to reserve status based on alleged errors in a performance report.  We explained that civilian courts must hesitate in reviewing "internal military affairs" like this one.  <u>Id.</u> at 201.  We therefore formulated a test to determine whether such issues would be justiciable in a particular case.  As a threshold matter, the court must determine that the following two prerequisites to justiciability are met:

> (1)  The plaintiff has alleged a deprivation of constitutional rights or that the military violated statutes or its own regulations; and
>
> (2)  Exhaustion of intra-service measures.

<u>Mindes</u>, 453 F.2d at 201.  If both criteria are met, then we weigh four factors in considering whether the issue is justiciable:

17

> (1) The nature and strength of the plaintiff's challenge. Constitutional claims are normally more important than those with a statutory or regulatory base;
>
> (2) The potential injury to the plaintiff if review is refused;
>
> (3) The type and degree of anticipated interference with the military function; and
>
> (4) The extent to which the exercise of military expertise or discretion is involved.

Id. at 201-02.

### (3)

There are two threshold issues we must address before we can consider the application of Mindes to Meister's two remaining claims. First, we must determine whether Mindes ever applies to claims by a civilian plaintiff. Second, we must consider whether Mindes is still viable in the face of supervening precedent.

### (a)

Existing case law provides no clear answer to whether Mindes applies to claims by non-military personnel. Two district courts have utilized a Mindes analysis in this situation, though they did so without discussing the plaintiff's non-military status. Malone v. United States, 61 F.Supp.2d 1372, 1381-82 (S.D. Ga. 1999); Professional Helicopter Pilots Assoc. v. Carlucci, 731 F.Supp. 440, 446-48 (M.D. Ala. 1990). The only other decisions on this point come from the Ninth Circuit, and they contradict each other. In Khalsa v. Weinberger, 779 F.2d 1393 (9th Cir. 1985), adhered to,

18

787 F.2d 1288 (9th Cir. 1985), the plaintiff was a member of the Sikh religion who brought an action against the army for refusing to process his enlistment application because he could not comply with army appearance regulations. Though the plaintiff in that case was a civilian, the Ninth Circuit held that the issue still involved "internal military decisions" and therefore required analysis under Mindes to determine justiciability:

> [I]f regulations governing soldiers' appearance are not "internal," then no Army regulations are internal. Almost any regulation may cause a particularly sensitive civilian to decide that he or she could not take the statutory enlistment oath to follow all orders.

Id. at 1397. But in Bledsoe v. Webb, 839 F.2d 1357, 1360 (9th Cir. 1988), that same circuit held that Mindes did not apply to a claim by a female civilian asserting that the Navy violated Title VII by denying her access to a naval vessel based on her sex.

We find the Khalsa analysis more convincing. Whether the plaintiff is a civilian or a serviceman does not affect whether the issue we are reviewing qualifies as an "internal military decision." Some decisions, by their nature, are inherently military, regardless of who the plaintiff is. Thus, we will not forestall the application of Mindes simply because Meister is suing as a civilian.

(b)

19

There is also some confusion as to <u>Mindes</u>'s continued viability. In <u>Wright v. Park</u>, 5 F.3d 586, 590-91 (1st Cir. 1993), the First Circuit interpreted the breadth of the rule in <u>Stanley</u> to preempt <u>Mindes</u>. Other circuits have continued to apply the <u>Mindes</u> doctrine, however. <u>See</u>, <u>e.g.</u>, <u>Guerra v. Scruggs</u>, 942 F.2d 270, 275 (4th Cir. 1991); <u>Watkins v. United States Army</u>, 875 F.2d 699, 705 (9th Cir. 1989)(<u>en</u> <u>banc</u>). The Tenth Circuit relied on <u>Mindes</u> in <u>Lindenau v. Alexander</u>, 663 F.2d 68 (10th Cir. 1981), and a recent unpublished decision from that circuit suggests that the doctrine still has force there. <u>See</u> <u>Robertson v. United States</u>, 1998 WL 223159 at **2-3 (10th Cir. 1998). <u>See</u> <u>also</u> <u>Saum v. Widnall</u>, 912 F.Supp. 1384, 1396 (D. Col. 1996)(applying <u>Mindes</u>). In 1993, the Seventh Circuit demonstrated its belief that <u>Mindes</u> had survived <u>Stanley</u> by rejecting <u>Mindes</u> on other grounds. <u>See</u> <u>Knutson v. Wisconsin Air National Guard</u>, 995 F.2d 765, 768 (7th Cir. 1993).[5]

Our own circuit has not discussed <u>Mindes</u> since <u>NeSmith v. Fulton</u>, 615 F.2d 196, 201 (5th Cir. 1980), which has led two district courts within the circuit to opine on its continued viability. In <u>Udell v. Adjutant General's Dept. of Texas</u>, 878 F.Supp. 991, 994 (S.D. Tex. 1995), the court concluded that we had

---

[5]The Seventh Circuit panel held that <u>Mindes</u> "erroneously 'intertwine[d] the concept of justiciability with the standards to be applied to the merits of the case.'" <u>Knutson</u>, 995 F.2d at 768 (citation omitted).

20

abandoned <u>Mindes</u> in favor of <u>Chappell</u> in <u>Crawford v. Texas Army National Guard</u>, 794 F.2d 1034 (5th Cir. 1986). And in <u>Hassenfratz v. Garner</u>, 911 F.Supp. 235, 237 (S.D. Miss. 1995), a Mississippi district court agreed with the First Circuit's conclusion that <u>Stanley</u> preempted <u>Mindes</u>.

We disagree with both district courts. First, <u>Crawford</u> did not overturn <u>Mindes</u>. The question in that case was whether <u>Chappell</u> barred the National Guardsmen's §§ 1983 and 1985 claims. We concluded that the case did. But we noted that the First Circuit, which had interpreted <u>Chappell</u> more narrowly, had relied on <u>Mindes</u>. We did not express any disapproval with this conclusion, which suggests that the <u>Crawford</u> panel believed <u>Mindes</u> still had some force.

Second, we do not believe that <u>Stanley</u> entirely preempted <u>Mindes</u>. It is true that <u>Stanley</u> blocks claims brought by servicemen incident to their military service, which therefore preempts <u>Mindes</u> with respect to such claims. But claims still fall within <u>Mindes</u> that <u>Stanley</u> does not encompass--those involving "internal military decisions" that are not "incident to [a serviceman's] military service." The question before us, therefore, is whether Meister's second two claims concern "internal military decisions."

(4)

21

The record before us was not developed with an eye to Mindes. We are therefore unable to determine whether transferring Meister and hiring someone else for the State Human Resource Manager position were "internal military decisions." This necessitates a remand. If the district court determines that the decisions were of this type, then the court should evaluate the justiciability of these two claims under Mindes. We ultimately leave this determination to the district court.

All we hold today is that there may be some civilian positions that are so intertwined with the operation of the military that courts lack the competence to evaluate hiring and firing. Such decisions may be "internal to the military," and a Mindes analysis is required before proceeding further.

### III

For the reasons stated herein, the district court judgment is

AFFIRMED in part, REVERSED and REMANDED.

22