[**PUBLISH**]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 24, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-13616

_____

D. C. Docket No. 99-00846-CV-C-N


MARVIN K. SPEIGNER, JR.,
retired,

                                        Plaintiff-Appellant,


        versus


WILLIE A. ALEXANDER, Major
General, Alabama Army National
Guard, The Adjutant General,
CLYDE A. HENNIES, Major
General, former Adjutant
General, Alabama Army National Guard, et al.,

                                        Defendants-Appellees.

_____


Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 24, 2001)


Before BIRCH and HULL, Circuit Judges and TIDWELL*, District Judge.

_____
* Honorable G. Ernest Tidwell, U.S. District Judge for the Northern District of Georgia, sitting
by designation.

BIRCH, Circuit Judge:

In this opinion, we decide whether a suit for injunctive relief based on a personnel decision can be brought against the Alabama National Guard ("Alabama Guard"). The district court dismissed the claim as nonjusticiable. We AFFIRM.

## I. BACKGROUND

Plaintiff-Appellant Marvin K. Speigner, Jr., a white male, was removed from the Alabama Guard after 25 years of service. He had reached the rank of Lieutenant Colonel. Because he was an officer with at least 20 years of service, Speigner was subject to annual review by the Selective Retention Board ("SRB"). The SRB considers an officer's record in light of United States National Guard ("National Guard") selection criteria, and either recommends that an officer be retained, be retained for a limited period, or not be retained at all. In 1997, the SRB recommended that Speigner be retained for one year, and in 1998, it recommended that Speigner not be retained. Defendant Clyde Hennies, then Adjutant General, approved both of these recommendations. Accordingly, Speigner was separated from the Alabama Guard in 1998.

Speigner identifies two regulations that were not followed during his SRB reviews. First, both the 1997 and 1998 SRBs had five members, rather than the mandated three or nine. Also, defendant Willie Alexander, a black colonel, sat on

2

both boards, though regulations preclude a member of an SRB from sitting on consecutive panels that consider the same officers. Hennies, then Adjutant General of the Alabama Guard, had received special permission each year from the National Guard to make both of these changes. Speigner alleged that he heard Hennies lament the lack of black colonels on his staff and express a desire to address racism in the Alabama Guard. The 1996 - 1999 SRBs removed 41 white male officers, 1 female, 1 "other" male, and 0 black males from the Alabama Guard. These statistics, combined with Hennies's statements and Alexander's presence on consecutive SRBs form the basis for Speigner's claim of racial bias.

Speigner filed a complaint, alleging racial discrimination under 42 U.S.C. § 1981, a denial of equal protection under 42 U.S.C. § 1983, a denial of due process under 42 U.S.C. § 1983, and race-based conspiracy, in violation of 42 U.S.C. § 1985.[1] He requested an injunction against racial discrimination in the Alabama State Military Department, reinstatement, back pay, compensatory and punitive damages, and attorneys' fees. Because Speigner voluntarily dismissed his claims for compensatory and punitive damages,[2] the district court considered only his

---

[1]In a later filing, Speigner agreed that his claim of race-based conspiracy under § 1985 was barred by the intracorporate conspiracy doctrine. R1-33-15. See McAndrew v. Lockheed Martin Corp., 206 F3d. 1031 (11th Cir. 2000) (en banc).

[2]As discussed in section IIA of this opinion, Speigner's claims for monetary damages were clearly nonjusticiable under United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054 (1987).

claims for declaratory and injunctive relief against the Alabama Military Department and against Alexander in his official capacity. The district court granted summary judgment against Speigner on the grounds that his case was nonjusticiable under Feres v. United States, 340 U.S. 135, 71 S.Ct. 153 (1950), Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362 (1983), and United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054 (1987).

## II. DISCUSSION

We review a grant of summary judgment de novo, viewing all the facts in the light most favorable to the non-moving party. Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

A. Feres and Its Progeny

The district court correctly granted summary judgment in this case based on the Supreme Court precedent set forth in Feres, Chappell, and Stanley. In Feres, the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. This remained a limited doctrine until 1983, when the Supreme Court expanded the

4

holding to include all suits for damages. Chappell, 462 U.S. at 305, 103 S.Ct. at

2368 ("We hold that enlisted military personnel may not maintain a suit to recover

damages from a superior officer for alleged constitutional violations.").[3] The

impetus behind this decision was an acknowledgment of the "special nature of

military life [and] the need for unhesitating and decisive action by military officers

and equally disciplined responses by enlisted personnel [that] would be

undermined by a judicially created remedy exposing officers to personal liability at

the hands of those they are charged to command." Id. at 304, 103 S.Ct. at 2367.

Because the circuits were inconsistent in their application of Chappell, the

Court granted certiorari in Stanley. Stanley, 483 U.S. at 676, 107 S.Ct. at 3059-60.

In Stanley, the Court reiterated the importance of the Feres "incident to service"

test, and extended the nonjusticiability doctrine to include Bivens actions.[4] Id. at

683-84, 107 S.Ct. at 3064. Later cases in several of the circuits extended the

application of the Feres "incident to service" test to cases brought under § 1983, an

interpretation that grants state actors the same degree of immunity from civil suits

as federal actors would be afforded under Stanley. See, e.g., Watson v. Arkansas

---

[3]The doctrine was further expanded to include suits for non-constitutional violations in United States v. Shearer, 473 U.S. 52, 59, 105 S.Ct. 3039, 3044 (1985).

[4]Under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971), an individual can seek monetary damages from a federal official for a violation of constitutional rights.

Nat'l Guard, 886 F.2d 1004, 1007 (8th Cir. 1989) ("This circuit, along with the majority of circuits that have considered the question, has extended the logic of Chappell to actions brought against National Guard officers under § 1983 [because] [t]he concern for the disruption of military discipline upon which Feres, Chappell, and Stanley are based applies equally when a court is asked to entertain an intra-military suit under § 1983."); accord Bowen v. Oistead, 125 F.3d 800, 803 n.2 (9th Cir. 1997); Wright v. Park, 5 F.3d 586, 591 (1st Cir. 1993).  As a result of this line of cases, there is no recognized cause of action for a member of the armed forces to request monetary damages from the military if the claim is based on an injury that is incident to service.[5]

At issue in this case is whether this doctrine of nonjusticiability extends to cases for injunctive relief.  Based on the policy behind the Supreme Court

---

[5]We no longer apply the test in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971) to determine justiciability in cases by members of the armed forces brought against the military if the claim is based on an injury incident to service. See Stanley, 483 U.S. 669, 107 S.Ct. 3054 (1987) (establishing a broader test for nonjusticiability); United States v. Kitowski, 931 F.2d 1526 (11th Cir. 1991) (applying the "incident to service" test without mention of Mindes); Doe v. Garrett, 903 F.2d 1455, 1463 n.15 (11th Cir. 1990) ("[I]t appears well established that Mindes need not be applied before reaching the merits of a statutory claim against the military."). But see Stinson v. Hornsby, 821 F.2d 1537, 1540 (11th Cir. 1987) (remanding case against the military to district court to apply Mindes factors).  In this case, we expressly do not address the applicability of Mindes to other situations.  See, e.g., Meister v. Texas Adjutant Gen. Dep't, 233 F.3d 332, 341 (5th Cir. 2000) ("It is true that Stanley blocks claims brought by servicemen incident to their military service, which therefore preempts Mindes with respect to such claims. But claims still fall within Mindes that Stanley does not encompass–those involving 'internal military decisions' that are 'not incident to [a serviceman's] military service.'").

decisions, and consistent with the majority of the circuits that have addressed this issue, we hold that, with certain exceptions, it does. The Supreme Court has made clear that,

> [c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment.

Chappell, 462 U.S. at 300, 103 S.Ct. at 2366. It is this basic premise that underlies the string of cases finding suits by enlisted personnel against the military for an injury incident to service nonjusticiable for injunctive relief as well as damages.

B. Circuit Approaches

Despite the Supreme Court's attempt in Stanley to harmonize the approaches of the courts of appeal, implementation of Stanley has been inconsistent in cases for injunctive relief. A discussion of the differences is helpful to explain our rationale for agreeing with the majority of circuits that have addressed this issue.

The Seventh Circuit, in Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765 (7th Cir. 1993), found cases for reinstatement against the military nonjusticiable. According to the court, "[t]hese sorts of reinstatement claims, often pending for several years in civilian courts, may well leave WIANG in limbo awaiting the outcome of litigation and thus significantly hamper its ability to staff

properly and to fulfill its mission." Id. at 771. The result of review of military personnel decisions by civilian courts would be to "undermine military discipline and decision-making or impair training programs and operational readiness." Id.

In Watson, the Eighth Circuit found a case nonjusticiable for similar reasons. As does Speigner, Watson brought a 42 U.S.C. § 1983 action seeking damages, back pay, correction of his record, and reinstatement of the National Guard.[6] Watson, 886 F.2d at 1007. The Eighth Circuit dismissed his case because "the policies upon which the Feres doctrine, and subsequent case law in that doctrine's development, are premised weigh heavily in favor of precluding claims for equitable relief." Id. at 1008. The court explained its decision by stressing that "[t]he judiciary does not acquire competence in this area merely because the remedy sought is an injunction rather than damages. . . . To disallow claims for damages while agreeing to review claims for injunctive relief arising from the same facts would be to exalt form over substance." Id. at 1009. The court wanted to avoid "a highly intrusive judicial inquiry into personnel decisions that bear upon the readiness of the military to perform its mission." Id. at 1008.

The Fifth Circuit approaches cases against the military in a similar manner. Though it was not necessary to apply the Feres line of cases to the facts, the Fifth

---

[6]While Watson's case was pending, the Supreme Court decided Stanley, causing Watson to abandon his claim for monetary damages. See Watson, 886 F.2d at 1007.

Circuit outlined the rationale and policy behind the nonjusticiability doctrine in Meister v. Texas Adjutant Gen. Dep't, 233 F.3d 332 (5th Cir. 2000). The court emphasized that "courts should not interfere with military discipline and management. These are areas where we have little competence or authority to proceed." Id. at 338. In Meister, the court cited Crawford v. Texas Army Nat'l Guard, 794 F.2d 1034, 1036 (5th Cir. 1986), a pre-Stanley decision that, consistent with Chappell, applied the same rationale as Meister.

In Crawford, plaintiffs requested, inter alia, injunctive relief in the form of reinstatement of their eligibility for all available retirement benefits and the removal of certain information from their personnel files. The Fifth Circuit held that their case was nonjusticiable because "[t]he injunctive-relief exception to Chappell advocated by appellants could swallow Chappell's rule of deference" to the military establishment. Id. at 1036. In conclusion, the Fifth Circuit stated its belief that "suits for injunctive relief, like those for monetary damages, must be carefully regulated in order to prevent intrusion of the courts into the military structure." Id. at 1036-37. The Fifth Circuit noticed an exception to this rule for cases involving "challenges to the facial validity of military regulations" that are distinct from "discrete personnel matters." Id. at 1036.

The Second Circuit also follows the same approach to cases by enlisted personnel against the military when the injury is incident to service. The court opined that "allowing service members to sue their superiors would unacceptably compromise military discipline and readiness for combat." Jones v. New York State Div. of Military and Naval Affairs, 166 F.3d 45, 52 (2nd Cir. 1999).

Relying on the same quote from Stanley that Speigner relies on in this case, the minority of circuits have held that injunctive relief is attainable against the military. To make the argument that he could sue the military for monetary damages, Stanley relied on the sentence in Chappell that states, "[t]his Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." Chappell, 462 U.S. at 304, 103 S.Ct. at 2368. In Stanley, the Supreme Court called this argument "irrelevant," and pointed out that, "[a]s the citations immediately following that statement suggest, it referred to redress designed to halt or prevent the constitutional violation rather than the award of money damages." Stanley, 483 U.S. at 683, 107 S.Ct. 3063. From this sentence, Speigner and the First Circuit see a window for claims for injunctive relief against the military. See Wigginton v. Centracchio, 205 F.3d 504, 512 (1st Cir. 2000) ("[T]aken together, Chappell and Stanley . . . make it clear that intramilitary suits alleging

10

constitutional violations but not seeking damages are justiciable.").  Before the Supreme Court decided Stanley, the Third Circuit, in a case that has been relied upon post-Stanley, also held that injunctive relief claims for reinstatement were justiciable based on Chappell.  See Jorden v. Nat'l Guard Bureau, 799 F.2d 99, 111 (3d Cir. 1986) ("[I]f Jorden establishes a constitutional violation, the remedy will be a court-ordered reinstatement, rather than the kind of ongoing judicial oversight held inappropriate in Gilligan. . . . Jorden's claims for reinstatement are reviewable.").

We do not find this argument persuasive, however, because the "citations immediately following" the Chappell quote that the Court referred to in Stanley are all cases challenging military regulations on their faces, rather than their application to discrete personnel decisions.  See, e.g., Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310 (1986) (First Amendment challenge to dress code in Air Force); Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646 (1981) (Fifth Amendment challenge to all-male draft registration);  Brown v. Glines, 444 U.S. 348, 100 S.Ct. 594 (1980) (First Amendment challenge to regulation of petitions); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547 (1974) (Fifth Amendment challenge that criminal provisions in the military code were overbroad and vague); Frontiero

v. Richardson, 411 U.S. 677, 93 S.Ct. 1764 (1973) (Fifth Amendment challenge to military benefits statute that discriminated against women).

In contrast, however, "civilian courts have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions." Knutson, 995 F.2d at 771. In cases where claims by enlisted personnel against the military have been heard, it was "[t]he nature of the lawsuits, rather than the relief sought, [that] rendered them justiciable." Crawford, 794 F.2d at 1036. See also Watson, 886 F.2d at 1010 ("There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision."). Therefore, we now hold that cases brought by enlisted personnel against the military for injuries incident to service are nonjusticiable, whether the claims request monetary damages or injunctive relief. Consistent with Supreme Court precedent, this holding in no way bars facial challenges to military regulations.

C. Incident to Service Test

Accordingly, if Speigner's injury was incident to service in the Alabama Guard, it is nonjusticiable. We apply a three-part test to determine whether an injury is incident to service. When undertaking such an analysis, we consider, "(1) the duty status of the service member, (2) the place where the injury occurred, and

(3) the activity the serviceman was engaged in at the time of injury." Pierce v. United States, 813 F.2d 349, 352-53 (11th Cir. 1987) (per curiam); see also Whitley v. United States, 170 F.3d 1061, 1070 (11th Cir. 1999). The rationale behind this test is to separate cases that may interfere with military discipline and command decisions from those that do not. See Whitley, 170 F.3d at 1069.

Speigner was on active duty with the Alabama Guard, and the injury took place at a formal review by the SRB and as a consequence of this review. The district court correctly held that the decision whether or not to retain Speigner meets the Pierce test and, therefore, is nonjusticiable. Accord Mier v. Owens, 57 F.3d 747, 751 (9th Cir. 1995) ("Military promotion is one of the most obvious examples of a personnel decision that is integrally related to the military's structure."). Because there are a limited number of positions available at the higher levels of command, it is imperative to the military that only those officers determined to be competent to serve are retained. To dictate to the military which officers should be considered competent would be to interfere in just the way that Feres and its progeny preclude.

### III. CONCLUSION

13

Because Speigner's complaint arises from an injury that was incident to his service as an officer in the Alabama Guard, we AFFIRM the judgment of the district court that his case in nonjusticiable.