845 F.2d 283
 46 Empl. Prac. Dec. P 37,971, 46 Ed. Law Rep. 543
 Norwood NORRIS, Plaintiff-Appellant,
v.
John LEHMAN, Secretary of the Navy, in Official Capacity;
Chief of Naval Education and Training, in Official Capacity;
Rear Admiral Kenneth Shugart, as Former CNET, in Official
Capacity; Captain Marwood Lewis, in Official and Individual
Capacity, Defendants-Appellees.
 No. 87-3094.
 United States Court of Appeals,
Eleventh Circuit.
 May 17, 1988.
 
 Joseph L. Hammons, Hammons, Roark & Whittaker, Pensacola, Fla., for plaintiff-appellant.
 Samuel A. Alter, Jr., Asst. U.S. Atty., Pensacola, Fla., Susan Donna Warshaw, Special Asst. U.S. Atty., Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Florida.
 Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Norwood Norris appeals from an order entered by the United States District Court for the Northern District of Florida granting summary judgment in favor of the appellee, Captain Marwood Lewis. We affirm.
 
 
 2
 Norris retired from active duty with the United States Navy with the rank of Chief Petty Officer. In 1969, after his retirement, Norris applied for and received certification by the Chief of Naval Education and Training ("CNET") as being qualified to serve as a Naval Junior Reserve Officer Training Corps ("NJROTC") instructor in public high schools. Certification by CNET is a prerequisite to employment as an NJROTC instructor in public high schools offering NJROTC programs. Upon gaining certification, Norris was hired as an Assistant Naval Science Instructor at Escambia High School in Pensacola, Florida. Norris held that position for approximately fourteen years.
 
 
 3
 The NJROTC Program is operated by the Navy in conjunction with local high schools. Students participating in the program are instructed in naval science by certified instructors. The Navy provides fifty percent of the funding for the salaries of these instructors. The program itself is officially sponsored and funded by the Department of Defense, Department of the Navy[1] and serves as an important recruitment vehicle.
 
 
 4
 Although NJROTC instructors are considered employees of the high school in which they are employed, the Secretary of the Navy is directed to "hold the school authorities responsible for the conduct of the program as prescribed."[2] In this regard, NJROTC units are evaluated annually.[3] Additionally, "Junior ROTC instructors must meet Military Service requirements and maintain standards acceptable to the Military Department concerned."[4] In order to qualify as an NJROTC instructor, an individual must be on active duty or, if retired, have served in the armed services on active duty for at least 20 years.[5]
 
 
 5
 On April 21, 1982, following receipt of an unsatisfactory report on the NJROTC unit at Escambia, Captain Lewis, the officer responsible to the CNET for conducting the entire NJROTC program, determined that it was "not in the best interests of the program"[6] to retain Norris, and, therefore, he revoked Norris's certification to teach effective August 16, 1982. Norris was sixty years old at the time. Because CNET certification is a prerequisite for an NJROTC instructor's position, Norris was terminated at Escambia High School.
 
 
 6
 Norris filed a complaint in the district court against the Secretary of the Navy, the CNET and the Escambia County School Board of Education ("School Board"), alleging that the termination of his certification was the result of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 626 et seq. ("ADEA") and in violation of Norris's rights under the Due Process Clause of the fifth amendment to the United States Constitution. Escambia was voluntarily dismissed once it was established that the School Board could not have continued to employ Norris without certification.
 
 
 7
 On September 24, 1985, the district court granted the remaining defendants' motion for summary judgment. The court concluded that the School Board, not the federal defendants, was Norris's "employer" within the meaning of the ADEA and that Norris had no constitutionally protected liberty or property interest so that due process rights did not attach to the termination of Norris's certification.
 
 
 8
 Having received leave of the court, Norris filed an amended complaint, addressing the same operative facts and alleging a cause of action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The amended complaint named as defendants the Secretary of the Navy, in his official capacity, the CNET, in his official capacity, Rear Admiral Kenneth Shugart, the former CNET, in his official capacity, and Captain Lewis, in both his official and individual capacities.
 
 
 9
 All of the defendants filed a motion to dismiss or, in the alternative, for summary judgment. On June 26, 1986, the district court granted the motion on sovereign immunity grounds as to all defendants except as to Captain Lewis, in his individual capacity.
 
 
 10
 Captain Lewis, the sole remaining defendant, renewed his motion for summary judgment arguing, inter alia,[7] that "special factors" barred a Bivens cause of action against him as an individual. On January 29, 1987, the district court granted Lewis's renewed motion. This appeal followed.
 
 
 11
 In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court sanctioned suits for damages against federal officials on constitutional grounds even in the absence of a congressional statute authorizing such relief. There are two exceptions to implying a Bivens claim directly from the Constitution. The first arises when "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). Because there is no statutory remedy for decertification of an NJROTC instructor, this exception has no relevance to the case before us. The second exception deals with a situation where "special factors [exist] counseling hesitation in the absence of affirmative action by Congress." Bivens, 403 U.S. at 396, 91 S.Ct. at 2005.
 
 
 12
 In Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court held that when a case arises in a military setting, the "special factors" bearing on the propriety of recognizing a Bivens claim are the same as those articulated in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed.2d 152 (1950), even though such a case does not implicate, as did Feres, Congress's intent in enacting the Federal Tort Claims Act. See Chappell, 462 U.S. at 298-99, 103 S.Ct. at 2364. The Chappell Court held that "special factors" barred a constitutional damages remedy for minority servicemen who charged discrimination against their superior officers. The Court found "special factors" in "[t]he need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice...." 462 U.S. at 300, 103 S.Ct. at 2365. The Court further observed that the Constitution explicitly authorizes Congress "[t]o raise and support Armies," "[t]o provide and maintain a Navy" and "[t]o make Rules for the Government and Regulation of the land and naval Forces," U.S. Const. Art. I, Sec. 8, cls. 12-14, thus demonstrating that "the Constitution contemplated that the Legislative Branch has plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline...." 462 U.S. at 301, 103 S.Ct. at 2366.
 
 
 13
 In Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court emphasized that, in deciding whether "special factors" exist,
 
 
 14
 [t]he question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff.
 
 
 15
 462 U.S. at 388, 103 S.Ct. at 2416-17. See also, United States v. Stanley, 483 U.S. ----, ----, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550, 566 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford Stanley ... an 'adequate' federal remedy for his injuries." The "special factor" is "the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate."). In this case, Norris's employment relationship was governed by a comprehensive regulatory scheme. See generally 32 C.F.R. Secs. 700-799. As stated in 32 C.F.R. Sec. 700.1201:
 
 
 16
 United States Navy Regulations is the principal regulatory document of the Department of the Navy, endowed with the sanction of law, as to duty, responsibility, authority, distinctions, and relationships of various commands, officials, and individuals. Other regulations, instructions, orders, manuals, or similar publications, shall not be issued within the Department of the Navy which conflict with, alter or amend any provision of Navy Regulations.
 
 
 17
 The district court was correct in its conclusion that to engraft a Bivens-type remedy onto this pervasive regulatory scheme would constitute an impermissible usurpation of legislative authority.
 
 
 18
 Moreover, the decision to decertify Norris as an NJROTC instructor was essentially a military one. We agree with the appellee that "the military relationship between Norris and Captain Lewis was the sine qua non for Captain Lewis's authority to decide whether to certify Norris." (Appellees' brief at P.13). As such, it would be improper to imply a Bivens remedy because such a suit would require a "civilian court to second-guess military decisions [citation omitted] and ... might impair essential military discipline." United States v. Shearer, 473 U.S. 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985). It is the "type of claim[ ] that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." Shearer, 473 U.S. at 59, 105 S.Ct. at 3044 (emphasis in original). Suits of this type "have the potential to disrupt military discipline in the broadest sense of the word." United States v. Johnson, 481 U.S. ----, ----, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648, 659 (1987).
 
 
 19
 Recently, the Court reiterated the principle first established in Chappell that "no Bivens remedy is available for injuries that 'arise out of or are in the course of activity incident to service.' " United States v. Stanley, 483 U.S. at ----, 107 S.Ct. at 3063, 97 L.Ed.2d at 567 (1987) (quoting Feres, 340 U.S. at 146, 71 S.Ct. at 159). Norris makes much of the fact that he was no longer on active duty at the time of the revocation of his CNET certification. While it may be true that Norris was nominally a civilian at that time, the relationship between him and Captain Lewis, in its very essence, was a military supervisory relationship.[8] It is undisputed that the Navy retained the authority to administer the NJROTC program and to supervise Norris. Furthermore, both the NJROTC units and its instructors must comply with a myriad of prescribed military instructions,[9] and only the Navy had the authority (1) to establish, disestablish or place on probation, NJROTC units[10] and (2) to withdraw certification as an NJROTC instructor.[11] The Navy is a vital part of our national defense and Norris served an important purpose in the development of high quality cadets in the NJROTC program at Escambia High School. We conclude that any injury that he suffered as a result of his decertification arose out of or was in the course of activity incident to service. Accordingly, we decline to imply a Bivens cause of action in this case. The judgment of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 See Department of Defense Directive, 1205.13 (March 7, 1975)
 
 
 [2]
 Id. at p. 7
 
 
 [3]
 CNET Instruction 1533.9D at Appendix 2-3(f)
 
 
 [4]
 Department of Defense Directive 1205.13 at p. 7
 
 
 [5]
 10 U.S.C. Sec. 2031(c)(1) and (d); CNET Instruction 1533.9D at Chapt. I-1, Sec. 103(a)
 
 
 [6]
 CNET Instruction 1533.9D at Chapt. IV-2, Sec. 404(b)(2)
 
 
 [7]
 Lewis also claimed that Norris had no constitutional right to be free from deleterious employment decisions based on age in the military setting and that, even if such a constitutional right exists, Lewis was entitled to qualified immunity because this right was not clearly established at the time he revoked Norris's CNET certification. The district court did not address these arguments, nor do we
 
 
 [8]
 See Feres, 340 U.S. at 143, 158 ("The relationship between the Government and members of its armed forces is 'distinctively federal in character.' ") (quoting United States v. Standard Oil Co., 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)); Johnson, 107 S.Ct. at 2069 n. 11 ("Civilian employees of the Government ... may play an integral role in military activities.")
 
 
 [9]
 See, e.g., DOD Directive 1205.13 at V(B), (C) and (E); CNET Instruction 1533.9D at Chapt. I-1, Sec. 103(a), Chapts V and VI
 
 
 [10]
 DOD Directive 1205.13 at 9V(A)(2) and (F)
 
 
 [11]
 CNET Instruction 1533.90 at Chapt. IV-2, Sec. 404(b)