**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT NEWTON,

      Plaintiff-Appellee/Cross-
      Appellant,

v.

WAYNE E. LEE and JOHN R. TETER,
in their individual capacities,

      Defendants-Appellants/Cross-
      Appellees,

and

BRIAN L. TARBET, BRENT E.
WINGET, and LARRY T. JOHNSON, in
their official and individual capacities,

      Defendants.

Nos. 10-4063 and 10-4072

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:07-CV-00041-CW)**

---

Bridget K. Romano, Assistant Utah Attorney General (Mark L. Shurtleff, Utah
Attorney General, with her on the briefs), Salt Lake City, Utah, for Defendants-
Appellants/Cross-Appellees.

D. Scott Crook (R. Christopher Preston with him on the brief) of Smith
Hartvigsen, PLLC, Salt Lake City, Utah, for Plaintiff-Appellee/Cross-Appellant.

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Robert Newton alleges Major John R. Teter and Lieutenant Colonel Wayne E. Lee of the Utah Air National Guard violated his due process rights when they suspended and subsequently withdrew his Air Traffic Control Specialist (ATCS) certificate, and when they suspended his employment as an Air Traffic Control Supervisor at Hill Air Force Base in Utah.[1] The district court granted summary judgment to defendants on Mr. Newton's due process claim regarding the suspension of his employment. *Newton v. Utah Nat'l Guard*, 688 F. Supp. 2d 1290, 1308-09 (D. Utah 2010). It denied summary judgment on Mr. Newton's due process claim regarding the withdrawal of his ATCS certificate, holding this

---

[1] Mr. Newton originally sued Maj. Teter and Lt. Col. Lee in their official and individual capacities, seeking damages and equitable relief. In addition to Maj. Teter and Lt. Col. Lee, Mr. Newton also named the Utah National Guard, Utah Air National Guard, Major General Brian L. Tarbet, Brigadier General Brent E. Winget, and Colonel Larry T. Johnson as defendants. The claims against these additional defendants, and against Maj. Teter and Lt. Col. Lee in their official capacities, are not before us on this interlocutory appeal. Mr. Newton also brought claims for violations of his equal protection rights. The equal protection claims are also not before us. Thus, we only discuss the due process claims against Maj. Teter and Lt. Col. Lee in their individual capacities. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)).

claim is not barred by qualified immunity, *id*. at 1305-07, or by intramilitary immunity under the *Feres* doctrine,[2] *id.* at 1311-14. In this interlocutory appeal, defendants challenge the denial of qualified immunity and intramilitary immunity on Mr. Newton's ATCS certificate claim. Mr. Newton cross-appeals the grant of summary judgment on his employment claim.

We hold that Mr. Newton's ATCS certificate is not barred by the *Feres* doctrine, and that we have no jurisdiction over the interlocutory appeal from the denial of qualified immunity to defendants. We decline to exercise pendent jurisdiction over Mr. Newton's cross-appeal.


**I.**

The Utah Test and Training Range "is a vast area in western Utah covering approximately one-fourth of the state . . . . [It] is one of the premier military test and training ranges in the nation."[3] Aplt. App. at 182. Users of the Utah Test and Training Range include military and civilian planes, unmanned aerial vehicles, and experimental military aircraft. The 299th Range Control Squadron of the Utah Air National Guard (UANG) provides air traffic and weapons control

---

[2] *See Feres v. United States*, 340 U.S. 135, 146 (1950) ("[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.").

[3] Because this immunity appeal is from the denial of summary judgment, we recite the facts in the light most favorable to the nonmoving party, Mr. Newton. *See McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

-3-

services at the Utah Test and Training Range on Hill Air Force Base for the United States Air Force Air Combat Command.

An ATCS certificate "authorizes the bearer to perform specified air-traffic-control duties at a designated facility." *Newton v. FAA*, 457 F.3d 1133, 1135 (10th Cir. 2006). Under Air Force Instruction 13-203, which regulates military air traffic controllers and applies to the UANG, "only personnel holding a current Air Traffic Control Specialist (ATCS) Certificate [are] authorized to perform air traffic control duties in USAF facilities." AFI 13-203, § 14.1 (May 5, 2003), Aplt. App. at 556.

In 1968, Mr. Newton obtained an ATCS certificate from the Federal Aviation Administration. In 1985, he enlisted in the UANG and began working part-time as an air traffic controller for the 299th Range Control Squadron. In 1988, while still a member of the UANG, he began working full-time for the UANG in a civilian capacity as an Air Traffic Control Supervisor, also called a "watch supervisor." This civilian position did not require current or prior military service.

Mr. Newton left the military in December 2002 when he retired from the UANG, but he continued to work full-time as a civilian Air Traffic Control Supervisor. His responsibilities as watch supervisor were essentially the same both before and after his retirement from the military. In this position, Mr. Newton supervised and directed the activities of air traffic controllers and air

weapons directors, and was "responsible for the safe, orderly, and expeditious flow of air traffic, both military and civilian[,] utilizing the [Utah Test and Training Range]." Aplt. App. at 183. During the relevant time, his direct supervisor was Maj. Teter, the 299th Range Control Squadron's Director of Operations. Maj. Teter, in turn, was supervised by Lt. Col. Lee, the Squadron Commander.

Between January 2002 and November 2003, defendants assert Mr. Newton was implicated in five air traffic control incidents at Hill Air Force Base. An Incident Review Board (IRB) investigated each event. In one incident, an airspace violation occurred when an aircraft entered airspace without proper coordination with air traffic control. In another incident, an F-16 improperly dropped an ordnance in a target area that was closed.[4] The IRB's reports did not include any findings that the watch supervisor had caused either of these events, but after the ordnance drop the IRB recommended that Mr. Newton be counseled because he did not immediately suspend the culpable air traffic controller.

In the remaining three incidents, a loss of separation occurred between aircraft.[5] The IRB recommended that the watch supervisor be counseled after the first loss of separation, but it did not state that he was responsible for the

_____

[4] Ordnance includes military supplies such as bombs and artillery.

[5] A loss of separation occurs when the distance between planes is either less than five miles horizontally or less than 1000 feet vertically.

incident. After the second loss of separation, the IRB concluded Mr. Newton had "failed to adequately supervise and support the controllers" under his supervision. *Id.* at 612. It recommended that he be suspended and retrained.

The third loss of separation and final incident occurred on November 17, 2003. The three members of the IRB disagreed as to what findings they should make regarding Mr. Newton's role in the incident. Two members agreed that Mr. Newton was not at fault for the loss of separation, but the third wanted the report to place blame on Mr. Newton. Ultimately the report did not blame Mr. Newton for the loss of separation, but it asked, "After the loss of separation occurred did the Watch Supervisor make every effort to relieve the controllers involved?" *Id.* at 593. It also recommended that Mr. Newton be asked to explain "why facility procedures were not adhered to when a suspected loss of separation occurred." *Id.*

In the subsequent weeks, actions were taken to withdraw Mr. Newton's ATCS certificate and end his employment. On November 20, 2003, a day after the IRB issued its report on the final loss of separation, Maj. Teter verbally suspended Mr. Newton's ATCS certificate, although he lacked the authority to do so.[6] On December 7, Lt. Col. Lee issued a written memorandum to Mr. Newton,

---

[6] As the district court explained, Maj. Teter "testified that he did not suspend Newton's ATCS certificate on November 20, 2003 because he lacked authority to do so. In contrast, Newton asserts that Major Teter did suspend his ATCS certificate on that date." *Newton*, 688 F. Supp. 2d at 1297 (footnote

stating that he was suspending Mr. Newton's ATCS certificate and restricting him from performing air traffic control duties. Lt. Col. Lee informed Mr. Newton that, "[a]fter receipt of the evaluation results, I may take action to withdraw your ATCS certificate without further notice." *Id.* at 186. The memo referenced Mr. Newton's "repeated failure in performing" his duties, but did not identify the specific acts which provided the basis for these disciplinary actions. *Id.* It notified Mr. Newton that he had a right to counsel and had ten business days to respond. Defendants concede that when the facts are read in a light most favorable to Mr. Newton, this written notice violated Air Force Instruction 13-203 because it was untimely.

We need not detail the many twists and turns that followed.[7] It suffices to say that Mr. Newton struggled to receive information from Lt. Col. Lee and others regarding the factual basis for, and the process of, suspending and possibly withdrawing his ATCS certificate. His requests for documents and additional information often were met with silence, delays, or incomplete replies. *See generally Newton*, 688 F. Supp. at 1298-1300.

Ultimately, on January 27, 2004, Lt. Col. Lee sent a package of information recommending the withdrawal of Mr. Newton's ATCS certificate to Scott Duke,

omitted). The district court found a disputed fact over whether Mr. Newton "was suspended from his position, or his ATCS certificate was suspended, or both." *Id.*

[7] The district court provided a thorough summary of the evidence in its opinion. *See Newton*, 688 F. Supp. at 1297-1300.

the Chief of the National Guard Bureau's Air Traffic Services Division. Mr. Duke had the exclusive authority to withdraw the ATCS certificate. In addition to information about the five air traffic control incidents detailed above, the withdrawal packet included two new allegations of wrongdoing by Mr. Newton that had not been disclosed to him.[8] Lt. Col. Lee omitted from the withdrawal packet a letter from Mr. Newton's attorney which provided Mr. Newton's response to three of the five air traffic control incidents alleged to form the basis of the withdrawal.

Mr. Duke approved the recommendation and Maj. Teter notified Mr. Newton by letter on February 24 that his ATCS certificate had been permanently withdrawn. The letter also stated, "You are . . . not authorized to perform any function related to [air traffic control] in the Air National Guard or [United States Air Force]." Aplt. App. at 226. Mr. Newton filed a formal internal grievance appealing this withdrawal, but the decision was upheld.[9] Mr. Newton was ordered

---

[8] Mr. Duke denied that he considered one of the new allegations in his decision.

[9] Defendants contend on appeal that Colonel C. E. West, Jr., a deputy director in Arlington, Virginia who reviewed and upheld Mr. Duke's decision, was the final decision-maker, rather than Mr. Duke. In the district court, however, defendants did not argue that Col. West was the final decision-maker. Instead, defendants asserted in their motion for summary judgment and statement of undisputed facts that Mr. Duke was the final decision-maker. *See* Aplt. App. at 119 ("Lt Col Lee had no authority to withdraw Plaintiff's ATCS Certificate; that authority rested exclusively with Mr. Duke . . . ."); *id.* at 70 ("Although Lt Col Lee had the authority to recommend withdrawal of an ATCS Certificate, he did not have authority to withdraw an ATCS Certificate; this authority rested with S.

to submit his ATCS certificate, which was returned to him with the word "VOID" written on it.  As a result, he contends, he will not be able to use his certificate at any other air traffic control facility, military or civilian.[10]

Beginning in December 2003, Maj. Teter also initiated proceedings to terminate Mr. Newton's employment.  On December 15, Maj. Teter issued Mr. Newton a Notice of Proposed Removal.  He informed Mr. Newton that he intended to terminate him for "failure to adequately supervise subordinates and disregard of directives," primarily based on the November 2003 incident.  *Id.* at 257.  The proposed removal was later reduced to a 14-day suspension.  Following the withdrawal of Mr. Newton's ATCS certificate, Lt. Col. Lee indefinitely suspended Mr. Newton without pay effective July 25, 2004.  This decision was upheld following an internal appeal.  The suspension continued to be in effect when Mr. Newton retired in August 2006.

Mr. Newton filed this action in December 2006 in Utah state court pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that defendants violated his due process rights when they withdrew his ATCS certificate, placed him on a 14-day suspension, and suspended his employment indefinitely without pay.  Defendants

Scott Duke . . . .").  We hold defendants to their earlier representation for purposes of this appeal.

[10] Mr. Newton also appealed the decision to the National Transportation Safety Board, which dismissed the appeal on jurisdictional grounds.  Mr. Newton appealed the Board's dismissal to this court, and we affirmed.  *Newton v. FAA*, 457 F.3d 1133, 1135-36 (10th Cir. 2006).

removed the case to federal court. *See* 28 U.S.C. § 1441.

Maj. Teter and Lt. Col. Lee subsequently filed a motion for summary judgment. The district court granted their motion on Mr. Newton's claim that his due process rights were violated by the procedures used to suspend his employment for 14 days and, later, to indefinitely suspend his employment without pay. The court concluded Mr. Newton was afforded adequate procedural due process for the 14-day suspension. *Newton*, 688 F. Supp. 2d at 1308-09. With regard to the indefinite suspension of employment, the court determined that the *Feres* doctrine precluded judicial review of the basis for the suspension, but that the procedures used to enact the suspension were adequate.[11] *Id.* at 1309.

Finally, the court denied summary judgment on Mr. Newton's due process claim relating to the withdrawal of his ATCS certificate. It determined defendants were not entitled to qualified immunity because it was clearly established that Mr. Newton had a protectable property interest in his ATCS certificate and, reading the evidence in favor of Mr. Newton, they had failed to afford him adequate due process before depriving him of that interest. *Id.* at

---

[11] The district court interpreted the *Feres* doctrine as barring only claims implicating "the *substantive* decisions of the military," but not preventing a court from examining whether the military followed proper *procedures* in implementing its decisions. *Newton*, 688 F. Supp. 2d at 1314 (emphasis added). None of the parties advocated this substantive/procedural distinction in the district court, and they do not endorse it on appeal. We agree with Mr. Newton and defendants that the district court misinterpreted the *Feres* doctrine. *See infra* Part II.B.

1306-07. It also concluded defendants were not immune from suit under the *Feres* doctrine. *Id.* at 1314.

Maj. Teter and Lt. Col. Lee appeal the district court's denial of summary judgment on Mr. Newton's ATCS certificate due process claim. They contend the claim is barred by the *Feres* doctrine and, alternatively, they are entitled to qualified immunity. Mr. Newton cross-appeals, arguing the district court improperly granted Maj. Teter and Lt. Col. Lee summary judgment on his employment due process claim.

## II.

Before we consider the applicability of the *Feres* doctrine to Mr. Newton's claim regarding the withdrawal of his ATCS certificate, we must address our jurisdiction to consider this interlocutory appeal from the denial of intramilitary immunity, an issue this court has not previously decided. Courts of Appeals have jurisdiction over final decisions of the district courts. *See* 28 U.S.C. § 1291. An order denying summary judgment is ordinarily not appealable because it is not a final order. *Stewart v. Oklahoma*, 292 F.3d 1257, 1259 (10th Cir. 2002). There are certain exceptions, however, under the "collateral order" doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (collateral order exception triggered by an assertion of right conclusively decided by a lower court that is "too important to be denied review and too independent of the cause itself

-11-

to require that appellate consideration be deferred until the whole case is adjudicated"). "To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Gray v. Baker*, 399 F.3d 1241, 1245 (10th Cir. 2005) (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)).

Other circuits have held that a defendant's appeal from the denial of intramilitary immunity under *Feres* satisfies these three requirements. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1340 (11th Cir. 2007); *Dibble v. Fenimore*, 339 F.3d 120, 125 (2d Cir. 2003); *Lutz v. Sec'y of the Air Force*, 944 F.2d 1477, 1484 (9th Cir. 1991). Because all three factors of the collateral order doctrine are satisfied, we agree with those circuits that we have jurisdiction to consider defendants' interlocutory appeal from the denial of intramilitary immunity.

First, the district court's summary judgment order "conclusively determined" the availability of intramilitary immunity. *See Newton*, 688 F. Supp. 2d at 1314. Second, whether Mr. Newton's injuries were incident to military service is a separate question from the merits of his action. Third, just as qualified immunity provides "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), immunity

under the *Feres* doctrine is justified, in part, by the Court's concern "that the process of defending a lawsuit, not merely the end result, compromises military discipline," *Dibble*, 339 F.3d at 124 (citing *United States v. Stanley*, 483 U.S. 669, 682-83 (1987)).  The *Feres* doctrine reduces "the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands," and the disruptions such lawsuits pose to the "military regime." *Stanley*, 483 U.S. at 682-83.  "Intramilitary immunity is designed to protect a defendant from the obligation to participate in the litigation, and not merely from an adverse result.  The loss of such a benefit cannot be vindicated by appeal from an adverse final judgment." *Dibble*, 339 F.3d at 124.  Thus, the denial of intramilitary immunity will be "effectively unreviewable" on appeal from a final judgment.

Given our jurisdiction to proceed, we review de novo the district court's denial of a summary judgment motion asserting intramilitary immunity, applying the same standard as the district court and construing the evidence in the light most favorable to the nonmoving party.  *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (applying de novo review to denial of summary judgment motion for qualified immunity); *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2005) (applying de novo review to grant of summary judgment under *Feres* doctrine).

## A. The *Feres* Doctrine and its Application to § 1983 Claims

In *Feres*, 340 U.S. 135, the Supreme Court created a judicial exception to the broad waiver of sovereign immunity set out in the Federal Tort Claims Act (FTCA). The Court held that the federal government is not liable under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity *incident to service*." *Id.* at 146 (emphasis added). Courts have since extended *Feres*'s "incident to service" test to bar a range of damages actions against military and civilian officials. *See Ricks v. Nickels*, 295 F.3d 1124, 1127-28 (10th Cir. 2002) (collecting cases).

The Supreme Court extended the *Feres* doctrine to bar constitutional claims in *Chappell v. Wallace*, 462 U.S. 296 (1983). There, Navy enlisted men sought relief pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[12] for alleged racial discrimination by their superior officers. The Court explained that while the case at bar "concern[ed] the limitations on the type of nonstatutory damage remedy recognized in *Bivens*, rather than Congress' intent in enacting the [FTCA]," its reasoning in *Feres* guided its analysis. *Chappell*, 462 U.S. at 299. The Court concluded that

---

[12] Under *Bivens,* an individual can seek damages from a federal official for a violation of his Fourth Amendment rights. 403 U.S. at 397. The Supreme Court has extended *Bivens* to allow damages actions under the Eighth and Fifth Amendments. *See Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979).

-14-

"[t]aken together, the unique disciplinary structure of the military establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* at 304; *see also id.* at 299 (describing military discipline and the importance of special relationships between soldiers and their superiors as best explaining *Feres*); *Ricks*, 295 F.3d at 1129 (discussing cases emphasizing importance of military disciplinary structure as basis for applying *Feres* doctrine). Thus, the Court held "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Chappell*, 462 U.S. at 305.

In *United States v. Stanley*, 483 U.S. 669 (1987), the Court reiterated *Chappell*'s holding and clarified that the *Feres* doctrine's application to *Bivens* claims was coextensive with its application to FTCA claims. *See id.* at 681 ("Today, no more than when we wrote *Chappell*, do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an 'incident to service' rule."); *see also id.* at 683-84 ("We therefore reaffirm the reasoning of *Chappell* that the special factors counselling hesitation — the unique disciplinary structure of the Military Establishment and Congress' activity in the field — extend beyond the situation in which an officer-subordinate relationship exists, and require abstention in the inferring of *Bivens* actions as extensive as the

-15-

exception to the FTCA established by *Feres . . . .*"  (citation and internal quotation marks omitted)).  Indeed, the Court emphasized that the precise language of the "incident to service" test was directly applicable to *Bivens* claims. It held that "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'"  *Id.* at 684 (quoting *Feres*, 340 U.S. at 146); *see also Ricks*, 295 F.3d at 1130 ("*Stanley* thus effectively merged the 'special factors' analysis [of *Bivens*] with the incident to service test.").

Although *Stanley* clarified that the "incident to service" test is applicable to constitutional claims brought under *Bivens*, the Supreme Court has never held that this test applies to constitutional claims brought under § 1983.  In *Martelon v. Temple*, 747 F.2d 1348, 1351 (10th Cir. 1984), however, we applied the *Feres* doctrine to bar a § 1983 claim against officers of the Colorado Army National Guard.  Since then, many of our sister circuits have followed suit.  *See Speigner v. Alexander*, 248 F.3d 1292, 1295 (11th Cir. 2001) (applying "incident to service" test in § 1983 case because under *Feres*, *Chappell*, and *Stanley* "there is no recognized cause of action for a member of the armed forces to request monetary damages from the military if the claim is based on an injury that is incident to service"); *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 51 (2d Cir. 1999) ("[T]he reasoning of *Chappell* and *Stanley*, developed in the *Bivens* context, applies with equal force to a § 1983 claim against state military officials."); *Bowen v. Oistead*, 125 F.3d 800, 803 n.2 (9th Cir. 1997)

-16-

("[I]nsofar as the *Feres* doctrine extends to the state National Guard units, it shields state military officers from constitutional claims brought under section 1983 to the same extent that it protects federal military personnel from defending against *Bivens* actions raising the very same claims."); *Wright v. Park*, 5 F.3d 586, 591 (1st Cir. 1993) ("[W]hile the *Stanley* Court's clarification of *Chappell* occurred in the context of a *Bivens* action, *Stanley* can only be understood to apply equally to civil rights claims against state officials under section 1983 . . . ."); *Knutson v. Wisc. Air Nat'l Guard*, 995 F.2d 765, 770 (7th Cir. 1993) (extending *Chappell* to § 1983 damages claims against National Guard officers); *Watson v. Ark. Nat'l Guard*, 886 F.2d 1004, 1007 (8th Cir. 1989) (explaining that "the logic of *Chappell*" extends "to actions brought against National Guard officers under § 1983" because "[t]he concern for the disruption of military discipline upon which *Feres*, *Chappell*, and *Stanley* are based applies equally when a court is asked to entertain an intra-military suit under § 1983"); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) ("[W]e perceive no basis upon which to distinguish [§ 1983 claims by National Guard members] from those held impermissible by *Chappell*.").

Accordingly, we follow the Supreme Court's direction that *Bivens* and § 1983 claims are equivalent for purposes of official immunity. *See Butz v. Economou*, 438 U.S. 478, 500 (1978) ("[I]n the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree

-17-

of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983.").  The "incident to service" test applies to § 1983 claims against state military officials.

## B.  Application of the "Incident to Service" Test to Claims Brought by Civilians

The question we must decide here is whether the *Feres* doctrine's "incident to service" test bars Mr. Newton's claim despite his civilian status.  Mr. Newton argues that because he was not a service member at the time of his alleged injuries, the *Feres* doctrine does not apply.[13]

The rationales underlying the *Feres* doctrine have shifted over time, but "the importance of the military disciplinary structure . . . has been labeled the 'best expla[nation]' for *Feres*."  *Ricks*, 295 F.3d at 1129 (quoting *Chappell*, 462 U.S. at 299) (second alteration in original).  "Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word."  *United States v. Johnson*, 481 U.S. 681, 691 (1987).  In light of the nature of military life, "*Feres* and its

_____

[13] The district court concluded that Mr. Newton's civilian status would not impact its analysis regarding whether the *Feres* doctrine barred his claims.  *See Newton*, 688 F. Supp. 2d at 1311.

-18-

progeny indicate that suits brought by service members against the Government for injuries incurred incident to service are barred by the *Feres* doctrine because they are the '*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Id.* at 690 (quoting *United States v. Shearer*, 473 U.S. 52, 59 (1985)) (alteration in original).

Relatedly, "separation of powers concerns that the judiciary should not delve into the internal affairs of the military" counsel in favor of the intramilitary immunity doctrine. *Ricks*, 295 F.3d at 1129. The *Feres* doctrine prevents courts from second-guessing military decision-making and interfering in matters reserved for the political branches of government. *Id.*; *see also Stanley*, 483 U.S. at 683; *Johnson*, 481 U.S. at 691; *Shearer*, 473 U.S. at 57; *Chappell*, 462 U.S. 301-02.

There is no bright-line rule for determining if the *Feres* doctrine applies to a given case. *See Shearer*, 473 U.S. at 57. In applying the "incident to service" test, however, we do not delve into how each case would implicate issues of military decision-making. The Supreme Court in *Stanley* "explicitly rejected a 'special factors' analysis which would consider how military discipline would actually be affected in a particular case." *Ricks*, 295 F.3d at 1130 (discussing *Stanley*, 483 U.S. at 681). The Court explained:

A test for liability that depends on the extent to which particular suits

-19-

would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. . . . *The "incident to service" test, by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters.*

*Stanley*, 483 U.S. at 682-83 (emphasis added). Thus, following the Court's guidance, in evaluating whether Mr. Newton's ATCS certificate due process claim is barred by the *Feres* doctrine, we do not speculate or inquire how his particular suit would intrude upon military matters or force us to second-guess military decisions. Instead, we ask whether his suit arises from injuries incident to his military service. *See id.*; *see also Ricks*, 295 F.3d at 1130-31.

In applying the "incident to service" test, an individual's military status quite obviously plays a role in the inquiry. *See Pringle v. United States*, 208 F.3d 1220, 1224 (10th Cir. 2000) (listing "the duty status of the plaintiff when the negligent act occurred" as among the factors to consider when applying *Feres*); *Ricks*, 295 F.3d at 1132 ("[A] person's military status *may affect* the applicability of the *Feres* doctrine."). As we have previously noted, "the Supreme Court has broadened *Feres*, to the point where it now 'encompass[es], at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status as a member of the military*.'" *Pringle*, 208 F.3d at 1223-24 (quoting *Persons v. United States*, 925 F.2d 292, 296 n.7 (9th Cir. 1991))

(alteration in original) (additional emphasis added). The "incident to service" test has been interpreted to encompass even those injuries "that are attenuated from the servicemember's duty status." *Ricks*, 295 F.3d at 1228.

An individual's military status will not necessarily be determinative of whether *Feres* applies, however. "Nothing in the Supreme Court's jurisprudence . . . suggests that a person's complete discharge creates a *per se* rule that *Feres* is inapplicable." *Ricks*, 295 F.3d at 1132. For example, in *Ricks* we applied *Feres* to bar the claims of a former airman for injuries he allegedly incurred while held in a military prison. *See id.* at 1126. Although Mr. Ricks had been fully discharged from the Air Force at the time of his alleged injuries, we nevertheless held his claims were incident to his military service. We explained that a complete discharge from the military "does not automatically transform a servicemember into a civilian for purposes of *Feres* analysis." *Id.* at 1131. Instead, "[t]he paramount inquiry is whether the alleged constitutional violations are incident to the plaintiff's military service." *Id.* "[I]f a servicemember's claims are incident to service, it is immaterial whether the plaintiff has been fully discharged from the military." *Id.* at 1133. Despite having been discharged, Mr. Ricks' injuries were incident to military service because he was a military prisoner at a prison which confined no civilians and was operated by military personnel, he was incarcerated for offenses committed during active duty, and he continued to be subject to the Uniform Code of Military Justice. *See id.* at 1132.

-21-

He would not have been in the military prison but for his military service. Consequently, his incarceration at the military prison and the alleged injuries sustained during incarceration "stemmed from his military relationship such that [his claims were] incident to his military service." *Id.* (internal quotation marks omitted).

Other circuits have extended *Feres* to bar claims brought by certain "nominally civilian" employees of the military. For example, the Eleventh Circuit held *Feres* barred a suit brought by a retired naval officer working as a Junior ROTC instructor. *See Norris v. Lehman*, 845 F.2d 283, 287 (11th Cir. 1988). The instructors were required to "be on active duty or, if retired, have served in the armed services on active duty for at least 20 years." *Id.* at 285. The court held that although the plaintiff in *Norris* was "nominally a civilian," his position as an instructor was "in its very essence" military in nature. *Id.* at 287. Thus, any injury he suffered "arose out of or was in the course of activity incident to service." *Id.* Similarly, some circuits have applied *Feres* to bar claims brought by dual-status National Guard Technicians. *See, e.g.*, *Wetherill v. Geren*, 616 F.3d 789, 798 (8th Cir. 2010); *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 297 (5th Cir. 2008); *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 91-96 (2d Cir. 2004); *Fisher v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001); *Wright v. Park*, 5 F.3d 586, 589-91 (1st Cir. 1993); *Stauber v. Cline*, 837 F.2d 395, 400 (9th Cir. 1988). Although National Guard Technicians are civilian

-22-

employees of the military, they are required to enlist in the National Guard as a condition of their civilian employment. *See* 32 U.S.C. § 709; *Stauber*, 837 F.2d at 396. As an illustrative example, the Second Circuit explained that the *Feres* doctrine could apply to suits brought by Guard Technicians because of the "military characteristic" of their work and the difficulty of attempting to disentangle a plaintiff's civilian and military duties when determining if a suit is incident to service. *Overton*, 373 F.3d at 92. Notably, in all of these cases military service was a prerequisite for the plaintiffs' civilian employment.

But we have not found any cases from the Courts of Appeals that have extended *Feres* to bar the claims of an individual like Mr. Newton: a civilian employee of the military who was not required to have any military service for the position. The Fifth Circuit encountered similar facts in *Meister v. Texas Adjutant General's Department*, 233 F.3d 332 (5th Cir. 2000). There, the plaintiff was a full-time civilian employee of the Texas National Guard, *id.* at 334, and she also "happened to be a non-commissioned officer in the Texas Air National Guard," *id.* at 338 n.4. The suit alleged several Title VII violations arising from her civilian employment. *Id.* at 334. The court noted that the plaintiff's enlistment in the Texas Air National Guard was irrelevant because she was not required to enlist for her employment. *Id.* at 338 n.4. It also observed that the plaintiff was employed in a civilian capacity, "was not subject to military discipline or the military hierarchy," and "could quit whenever she wanted." *Id.*

-23-

at 338. For these reasons, the Fifth Circuit held *Feres* was inapplicable. *Id.*

The Supreme Court has never suggested that *Feres* applies to suits brought by civilian employees of the military. Instead, the Court has consistently cabined the doctrine to reach only injuries to service members. *See, e.g.*, *Johnson*, 481 U.S. at 687-88 ("[T]he *Feres* doctrine has been applied consistently to bar all suits on behalf of *service members* against the Government based upon service-related injuries." (emphasis added)); *Chappell*, 462 U.S. at 300 ("We hold that *enlisted personnel* may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." (emphasis added)). Indeed, the Court has even characterized the *Feres* doctrine as failing to reach claims by civilians. In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Court considered when a contractor providing military equipment to the federal government could be held liable for injury caused by a design defect. Although the Court considered extending the *Feres* doctrine to bar such claims, it concluded the doctrine was "in some respects too broad and in some respects too narrow" to address a contractor's liability. *Id.* at 510. The Court explained that the *Feres* doctrine was too narrow because it "covers only service-related injuries, and not injuries caused by the military to civilians." *Id.*

The district court and defendants both rely on *Presley v. Jackson Municipal Airport Authority*, 94 F. Supp. 2d 755 (S.D. Miss. 2000), to support applying *Feres* to purely civilian employees of the military. In *Presley*, the district court

held that although the plaintiff, a civilian firefighter for the state Air National Guard, "was not actually an enlisted member of the military," the *Feres* doctrine barred the suit. *Id.* at 761. The court reasoned that "his position was of a decidedly military nature and his claimed injury indisputably arose incident to his service to the military." *Id.* We respectfully disagree with the reasoning in *Presley*. The "incident to service" test asks whether injuries are incident to a service member's service *in* the military, not whether injuries are incident to an individual's service *to* the military. *See Chappell*, 462 U.S. at 305 ("*[E]nlisted military personnel* may not maintain a suit to recover damages from a superior officer for alleged constitutional violations" (emphasis added)); *Ricks*, 295 F.3d at 1131 ("The paramount inquiry is whether the alleged constitutional violations are incident to the *plaintiff's military service*." (emphasis added)).

In applying the incident to service test, we must not conflate a civilian's employment by the military with an enlisted person's service in the military. The Court has repeatedly noted that civilian life and military life are necessarily different, and the relationship between an enlisted person and the military is distinct from anything in civilian life. "In every respect the military is . . . 'a specialized society.'" *Johnson*, 481 U.S. at 690-91 (quoting *Parker v. Levy*, 417 U.S. 733, 743 (1974)). "In the civilian life of a democracy many command few; in the military, however, this is reversed, for military necessity makes demands on its personnel without counterpart in civilian life." *Chappell*, 462 U.S. at 300

-25-

(internal quotation marks omitted). And because "no military organization can function without strict discipline that would be unacceptable in a civilian setting," the military "has developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns." *Id.* We therefore must "adhere to the line drawn in [*Feres*] between injuries that did and injuries that did not arise out of or in the course of military duty." *United States v. Brown*, 348 U.S. 110, 113 (1954).

We are persuaded by this fundamental distinction between military life and civilian life that Mr. Newton's suit cannot be barred by the *Feres* doctrine. Injuries cannot arise "incident to service" if a plaintiff's claims are wholly unrelated to his current or former military service. Mr. Newton retired from the UANG more than a year before his ATCS certificate was withdrawn, so he was a civilian employee when his injuries arose. Furthermore, unlike the plaintiff in *Ricks*, 295 F.3d at 1132, or dual-status National Guard employees, Mr. Newton's injuries did not stem from his military relationship with the UANG. His position as Air Traffic Control Supervisor was a civilian position that did not require current or prior military service. Mr. Newton's ATCS certificate was originally issued by the FAA – a civilian government agency – before he enlisted in the UANG. His prior National Guard service had nothing to do with his alleged injuries, "except in the sense that all human events depend upon what has already

-26-

transpired." *Brooks v. United States*, 337 U.S. 49, 52 (1949).  Simply put, although Mr. Newton was employed by, and formerly a member of, the UANG, he was a civilian employee whose alleged injuries were not in any way incident to his military service.

The military status of defendants does not change our analysis.  The Supreme Court "has never suggested that the military status of the alleged tortfeasor is crucial to the application of the doctrine. . . . Instead, the *Feres* doctrine has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries."  *Johnson*, 481 U.S. at 686-88.

Defendants argue that this case must be barred by the *Feres* doctrine because although Mr. Newton was a civilian employee, he played an integral role in military activities, his supervisors were in a military chain of command, and his claims "call into question basic choices about military discipline, supervision, and control."  Aplt. Br. on Cross-Appeal at 18.  All of this may be true, but we must follow the Supreme Court's instruction not to examine "the extent to which particular suits would call into question military discipline and decisionmaking."  *Stanley*, 483 U.S. at 682.  As the Supreme Court has observed, "judges are not given the task of running the Army."  *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953).  "The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional

military judgments, subject *always* to civilian control of the Legislative and Executive Branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Intramilitary immunity may help ensure effective military operations, but we leave it to the elected branches of government and to the military to decide which employment positions within the armed forces should be held by civilians, rather than enlisted personnel. Significantly, the UANG employed Mr. Newton as a civilian and did not require military service as a prerequisite for the position. It is not our job to question whether this was appropriate.

Mr. Newton was a purely civilian employee of the military whose alleged injuries were unrelated to his prior military service. The *Feres* doctrine does not apply.

## III.

Defendants also appeal the denial of qualified immunity on Mr. Newton's claim that they violated his due process rights when suspending and withdrawing his ATCS certificate. The district court denied summary judgment because, "[v]iewing the[] facts in a light most favorable to Newton, a reasonable fact-finder could conclude that Newton was not afforded an appropriate level of process. Newton has therefore sufficiently alleged a constitutional violation." *Newton*, 688 F. Supp. 2d at 1307. In so doing, the district court concluded Mr. Newton's due process rights were clearly established and identified a number of

-28-

disputed fact issues relating to this claim.  *See, e.g.*, *id.* at 1297, 1307 n.151.

In an appeal from the denial of qualified immunity, "[o]ur interlocutory jurisdiction is limited to legal questions drawn from facts that are deemed undisputed for appellate purposes."  *Cortez*, 478 F.3d at 1115 (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Mitchell*, 472 U.S. at 528).  The denial of summary judgment is not reviewable as a collateral order "[t]o the extent that the district court's denial of the defendant's motion for summary judgment is predicated on 'evidence sufficiency,' *i.e.* which facts a party may, or may not, be able to prove at trial."  *Clanton v. Cooper*, 129 F.3d 1147, 1152 (10th Cir. 1997) (internal quotation marks omitted).  That is, "[a]n order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment."  *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997).  "We do not have jurisdiction to review the district court's factual findings, including its finding that a genuine issue of fact existed" to preclude summary judgment.  *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1259 (10th Cir. 1998).

Because the district court found that genuine issues of fact precluded granting qualified immunity to defendants, *see Newton*, 688 F. Supp. 2d at 1307, we lack jurisdiction over their interlocutory appeal of this issue.

**IV.**

Mr. Newton cross-appeals the grant of qualified and intramilitary immunity to Maj. Teter and Lt. Col. Lee on his due process claim arising from the suspension of his employment. In deciding in favor of defendants on this claim, the district court concluded Mr. Newton was "afforded procedural due process on his fourteen-day suspension." *Id.* at 1309. With respect to Mr. Newton's subsequent indefinite employment suspension, the court granted defendants qualified immunity with respect to the procedures used to indefinitely suspend Mr. Newton's employment because he "failed to show Defendants' conduct violated a statutory or constitutional right when they suspended him . . . ." *Id.* The court also granted Maj. Teter and Lt. Col. Lee intramilitary immunity to the extent the claim challenged the reason for the suspension.

"[A]n order granting immunity is not a collateral order which is immediately appealable under 28 U.S.C. § 1291 . . . ." *Clemens v. Kansas*, 951 F.2d 287, 288 (10th Cir. 1991). We therefore may review Mr. Newton's cross-appeal only by exercising pendent appellate jurisdiction. "Our exercise of pendent appellate jurisdiction . . . is generally disfavored." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1205 (10th Cir. 2008) (internal quotation marks omitted).

"It is appropriate to exercise pendent appellate jurisdiction only where resolution of the appealable issue necessarily resolves the nonappealable issue, or

where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1293 (10th Cir. 2008) (internal quotation marks omitted). The grant of immunity to defendants on the employment claim is not necessarily resolved by our determination that the *Feres* doctrine does not bar Mr. Newton's ATCS certificate due process claim. Nor is our review of the employment claim necessary to resolve the questions properly before us on interlocutory appeal. Accordingly, we cannot take pendent jurisdiction over Mr. Newton's cross-appeal.

## V.

We AFFIRM and REMAND for further proceedings in accordance with this opinion.